Carlos JOHNSON, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9901–JV–15.

Court of Appeals of Indiana.

Nov. 17, 1999.

---

Steven J. Halbert, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Sarah E. Scherrer, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

STATON, Judge

Carlos Johnson appeals his adjudication as a delinquent child. He raises three issues on appeal, which we restate as:

I. Whether the evidence is sufficient to support Johnson's adjudication as a delinquent child based upon the commission of disorderly conduct.

II. Whether Johnson's adjudication as a delinquent child contravenes Article 1, § 9 of the Indiana Constitution.

III. Whether Johnson's adjudication as a delinquent child contravenes the First and Fourteenth Amendments of the United States Constitution.

We affirm.

The facts most favorable to the delinquency finding reveal that Johnson and his mother were arguing at their home. Johnson told his mother that he did not intend to comply with certain terms of his probation that arose from a juvenile delinquency determination. Johnson's mother called the police.

When the police arrived Johnson was sitting in a chair eating candy. Indianapolis Police Officer Steve Atzhorn asked Johnson "what the problem was." Record at 145. Johnson looked at Atzhorn and shrugged. Atzhorn asked Johnson the same question again. Johnson became upset and began arguing with Atzhorn, his mother, and a second officer. Johnson stated that he was not going to attend the "classes he was supposed to be going to." Record at 145. Atzhorn testified that because Johnson was speaking in a voice louder than everyone else, no additional questions could be asked regarding the situation. Atzhorn asked Johnson to be quiet. Johnson continued arguing with Atzhorn and his mother. Atzhorn arrested Johnson. Johnson was adjudicated a delinquent child based upon disorderly conduct, which is a Class B misdemeanor when committed by an adult.[1] He appeals.

## I.

### Sufficiency of the Evidence

Johnson contends that the evidence is insufficient to support a finding of

---

1. IND.CODE § 35–45–1–3 (1998) (disorderly conduct statute). *See also,* IND.CODE § 31–37–1–2 (1998) ("A child commits a delinquent act if ... the child commits an act that would be an offense if committed by an adult....")

disorderly conduct. When the State seeks to have a juvenile adjudicated as a delinquent for committing an act that would be a crime if committed by an adult, the State must prove every element of the offense beyond a reasonable doubt. *Al–Saud v. State,* 658 N.E.2d 907, 908 (Ind.1995). Upon review, we apply the same sufficiency standard used in criminal cases. *Id.* at 909. When reviewing a claim of insufficient evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State,* 656 N.E.2d 816, 817 (Ind. 1995), *reh. denied.* We look to the evidence and the reasonable inferences therefrom that support the judgment. *Id.*

IC 35–45–1–3 provides, in pertinent part: "A person who recklessly, knowingly, or intentionally ... makes unreasonable noise and continues to do so after being asked to stop ... commits disorderly conduct...." Johnson contends that the State has failed to prove the unreasonable noise element of this offense. Specifically, Johnson argues that evidence of the volume of his speech is crucial to a finding that he made unreasonable noise, and that the evidence indicates only that he spoke louder than Officer Atzhorn and his mother. Johnson cites Atzhorn's testimony that Johnson was not yelling or screaming. Johnson suggests that he was simply trying to be heard in a room with three people arguing, and that the fact that he was louder than the others does not support the conclusion that he made unreasonable noise.

■ Johnson is correct in his assertion that the volume of his speech is critical in determining whether it was unreasonable within the meaning of IC 35–45–1–3. As our supreme court has stated, "the criminalization of 'unreasonable noise' was 'aimed at preventing the harm which flows from the volume' of noise." *Whittington v. State,* 669 N.E.2d 1363, 1367 (Ind.1996) (quoting *Price v. State,* 622 N.E.2d 954, 966 (Ind.1993) *reh. denied* ). Therefore, in order to support a conviction for disorderly conduct, "[t]he State must prove that a

defendant produced decibels of sound that were too *loud* for the circumstances." *Whittington,* 669 N.E.2d at 1367 (emphasis in original). Significantly, the supreme court observed in *Whittington* that a loud noise could be found unreasonable where it "disrupt[s] police investigations." *Id.*

■ Here, the evidence reveals that Johnson argued in a voice louder than the voices of others in the room. Johnson's volume prevented the police officers from asking additional questions in an effort to resolve the situation. This was true both before and after Officer Atzhorn asked Johnson to be quiet. It makes no difference that Johnson was not yelling or screaming. The question is whether Johnson's volume was too loud under the circumstances. *Id.* Because Johnson's loud manner of speaking disrupted a police investigation, the trial court's conclusion that Johnson made unreasonable noise is supported by the evidence. *See id.* The evidence is sufficient to support Johnson's adjudication as a delinquent child.

## II.

*Article 1, § 9 of the Indiana Constitution*

■ Johnson argues that his right to speak under Article 1, § 9 of the Indiana Constitution was violated by application of the disorderly conduct statute to the facts of this case. Section 9 provides: "No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: but for the abuse of that right, every person shall be responsible." In *Whittington,* our supreme court created a two-step inquiry for reviewing the constitutionality of an application of the disorderly conduct statute under § 9. 669 N.E.2d at 1367. "First, a reviewing court must determine whether state action has restricted a claimant's expressive activity. Second, if it has, the court must decide whether the restricted activity constituted an 'abuse' of the right to speak." *Id.*

■ Here, Johnson has satisfied the first prong by establishing that the State restricted his expressive activity. A person's conviction for making unreasonable noise based solely on his loud speaking during a police investigation satisfies this prong. *Id.* at 1370. A delinquency adjudication based upon the same type of conduct is also State action restricting expressive activity.

■ In order to meet the second prong, Johnson must prove that "the State could not reasonably conclude that the restricted expression was an 'abuse'" of Johnson's right to speak, and thus, that the State could not properly proscribe the conduct, pursuant to its police power, via the disorderly conduct statute. *Id.* at 1369. "One way a claimant can try to meet this burden is to show that his or her expressive activity was political. If a claimant succeeds in that attempt, the State must demonstrate that its action has not materially burdened the claimant's opportunity to engage in political expression." *Id.* Johnson argues that his expressive activity was political.

The supreme court discussed the parameters of political expression in *Whittington.*

> [T]he common feature of political expression is reference to state action.... Expressive activity is political ... if its point is to comment on government action, whether applauding an old policy or proposing a new one, or opposing a candidate for office or criticizing the conduct of an official acting under color of law.... In contrast, where an individual's expression focuses on the conduct of a private party—including the speaker himself or herself—it is not political.

*Id.* at 1370. The supreme court noted that the nature of the expression should be judged by an objective standard, and that the claimant bears the burden of establishing that his expression would have been understood as political. *Id.* "If the expression, viewed in context, is ambiguous, a reviewing court should find that the claimant has not established that it was political and should evaluate the constitutionality of any state-imposed restriction of the expression under standard rationality review." *Id.*

■ In the present case, Johnson argued with the officers and his mother, and stated that he was not going to attend the "classes he was supposed to be going to." Record at 145. Johnson asserts that he was commenting on the terms of his earlier probation, and was expressing an opinion that the "conditions were unfair and onerous and he did not want to abide by them." Appellant's Brief at 8. Thus, he argues that he was criticizing the State for imposing these unfair conditions.

We conclude that Johnson's comments are ambiguous. Although it is not implausible that Johnson was criticizing the State for imposing unfair probation conditions, it is equally plausible that Johnson was simply commenting on his own conduct and intentions. Johnson merely stated that he was not going to attend the required classes. This comment could be construed to reflect nothing more than Johnson's opinion that he can do what he wants, when he wants. Under this interpretation, Johnson was saying nothing about State action. Because Johnson has not established that his comments were political, "we must apply rationality review in determining whether the state could have concluded that [Johnson's] expressive activity, because of its volume, was an 'abuse' of the right to speak or was, in other words, a threat to peace, safety, and well-being." *Id.* at 1371.

Under the facts of this case, it is reasonably conceivable that Johnson's loud manner of speaking interfered with a police investigation into the reasons why Johnson's mother called them to her home. The police must be able to perform their work without unreasonable interruption when they are conducting a legitimate investigation. Therefore, the State could have rationally concluded that Johnson's

conduct constituted an abuse of the right to speak, and thus, fell within the State's police power. Johnson's adjudication did not contravene Article 1, § 9 of the Indiana Constitution.

### III.

*The First and Fourteenth Amendments*

 Finally, Johnson contends that his adjudication contravenes the First and Fourteenth Amendments of the United States Constitution. Johnson's argument on this issue consists of two paragraphs and a footnote. We are unable to discern the precise nature of Johnson's argument from this abbreviated discussion. Johnson has waived the issue. Ind. Appellate Rule 8.3(A)(7); *Mitchell v. Stevenson,* 677 N.E.2d 551, 558 n. 3 (Ind.Ct.App.1997), *trans. denied.*

Affirmed.

NAJAM, J., concurs.

RUCKER, J., concurs in part and dissents in part with opinion.

RUCKER, Judge, concurring in part and dissenting in part

I concur in parts II and III of the majority opinion. However, I respectfully dissent to part I because I am not convinced there is sufficient evidence to show that Johnson's speech amounted to unreasonable noise. Indeed my review of the record convinces me that the volume of Johnson's speech had nothing to do with his arrest and charge of disorderly conduct. Rather, it appears the arresting officer was irritated because Johnson argued with him and refused to quit talking when ordered to do so. The following direct examination of the officer is instructive:

Q. Okay. And after you arrived there did you speak with [Johnson] personally?

A. Yes I did.

Q. And what was said or what were his actions at that time?

A. At first ... I asked what the problem was and he just looked at me and shrugged. He was sitting there eating candy in a chair. I asked him again and then he got upset, arguing with me and his mother and the other officer. Then he said he wasn't going to his classes he was supposed to be going to. And after that it was hard to talk about what was going on. *I asked him to be quiet and he continued to argue with me and his mother. And I arrested him.*

Q. Was he making any unreasonable noises?

A. He was making it impossible to talk about the situation.

R. at 145. After cross-examination the following testimony resumed on re-direct:

Q. Just to clarify. When you said that he became upset. What specifically was he doing?

A. His voice got loud. Not to the point where he was screaming, but he was speaking louder than everybody else. And again *he kept talking* and was ... *they just couldn't ask any other questions about what was going on due to what he was saying.*

R. at 146.

Relying on *Whittington v. State,* 669 N.E.2d 1363, 1367 (1966) the majority has determined that Johnson's manner of speaking was unreasonable because it disrupted a police investigation. In that case the defendant was present in his home when the police were summoned to investigate a report of domestic violence. Upon arrival, the officers encountered Whittington, who had been drinking, along with his sister and the sister's boyfriend. Paramedics had also arrived on the scene. While the officers were attempting to determine what had happened, an argument erupted between Whittington and the sister's boyfriend. Whittington became "loud and boisterous" and when asked to settle down he persisted in "a very loud and

angry manner." *Id.* at 1366. The officers arrested Whittington for disorderly conduct and he was convicted as charged based on his loud speaking during the police investigation. Discussing the facts of the case as applied to the disorderly conduct statute, our supreme court observed:

> Loud noise could be found unreasonable in a case like Whittington's on a number of grounds. It could threaten the safety of injured parties by aggravating their trauma or by distracting the medical personnel tending them. *Loud outbursts could* agitate witnesses and *disrupt police investigations.* It could make coordination of investigations and medical treatment more difficult. Finally, loud noise can be quite annoying to others present at the scene.

*Id.* at 1367 (emphasis added). Although *Whittington* does seem to stand for the proposition that loud outbursts "can" disrupt police investigations, the proposition is fact sensitive. Stated differently, the facts in *Whittington* clearly show that the defendant's speech was "loud and boisterous" and as a result the police were disrupted in their investigation. By contrast, in the case before us the record is clear that Johnson's speech was neither loud nor boisterous, nor can it be characterized as an outburst. Just as importantly, I fail to see how Johnson's manner of speaking disrupted a police investigation. The officers were called to the scene by Johnson's mother because he had been arguing with her. There was no indication of violence, threat of violence, or that any other criminal activity had occurred or was about to occur. In essence there was nothing to investigate other than why a son had been arguing with his mother. Thus even assuming, as I do not, that Johnson's manner of speaking constituted loud noise, the police presence in the Johnson home did not amount to an investigation anticipated by *Whittington* that loud noise could disrupt.

I therefore dissent on this issue and would reverse the judgment of the trial court.