**Richard L. BARNES, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 82A05–0910–CR–592.

Court of Appeals of Indiana.

April 15, 2010.

---

Erin L. Berger, Vanderburgh County Public Defender Agency, Evansville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Karl M. Scharnberg, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Richard Barnes ("Barnes") appeals his jury convictions for Class A misdemeanor battery on a law enforcement officer, Class A misdemeanor resisting law enforcement, and Class B misdemeanor disorderly con-

duct. On appeal, Barnes challenges the trial court's refusal to give his tendered jury instruction regarding the right of a citizen to resist unlawful entry into his home and the sufficiency of the evidence to support his convictions.

We reverse and remand for proceedings consistent with this opinion.

### Facts and Procedural History

On November 18, 2007, Barnes and his wife, Mary, were arguing while Barnes was moving out of their apartment. During the argument, Mary tried to call her sister, but Barnes grabbed the phone and threw it against the wall. Mary then used her cell phone to call 911. Mary told the dispatcher that Barnes was throwing things around the apartment but stated that Barnes had not struck her.

Officer Lenny Reed responded to the 911 dispatch. When the officer arrived, he observed Barnes walking out of the apartment. Barnes was carrying a black bag. Officer Reed told Barnes that he was investigating a 911 call. Barnes told Reed that the officer was not needed, and that he should leave because Barnes was leaving. Because Barnes was yelling at the officer, Officer Reed told Barnes that he was going to arrest him for disorderly conduct if Barnes did not calm down. The officer noticed that people outside near the apartment building were staring at Barnes and the officer.

While Barnes was yelling at Officer Reed, Mary walked out of the apartment carrying another duffel bag. She threw the bag down on the ground, telling Barnes to take the rest of his things. Mary then walked back into the apartment followed by Barnes, Officer Reed, and another officer who had arrived on the scene.

When they reached the doorway of the apartment, Barnes turned around and told the officers that they could not enter. Officer Reed explained they needed to come in to investigate the 911 call. Barnes continued to deny the officers entry. During the argument between Barnes and the officers, Mary called out to Barnes saying, "Don't do this." and "Why don't you let them in." Tr. pp. 25, 87.

When Officer Reed attempted to walk past Barnes to enter the apartment, Barnes shoved the officer into the hallway. Officer Reed and Barnes continued to struggle and eventually the other officer on the scene grabbed Barnes in a vascular neck restraint and took Barnes to the ground. Barnes continued to struggle and a taser was used to subdue Barnes. Barnes suffered an adverse reaction to the taser and was transported to the hospital.

On December 4, 2007, Barnes was charged with Class A misdemeanor battery, Class A misdemeanor resisting law enforcement, Class B misdemeanor disorderly conduct, and Class A misdemeanor interference with the reporting of a crime. A jury trial commenced on June 25, 2009. Prior to the start of trial, Barnes tendered a jury instruction concerning the right of a citizen to reasonably resist unlawful entry into the citizen's home. The trial court refused to give the instruction.

At the close of the State's evidence, the trial court granted Barnes's motion for a directed verdict on the interference with the reporting of a crime charge. The jury found Barnes guilty of the remaining charges. The trial court ordered Barnes to serve a suspended sentence of 180 days for each conviction to be served concurrently. Barnes now appeals.[1]

1. We heard oral argument in this case on March 23, 2010, at the Indiana University School of Law—Indianapolis. We extend our thanks to the students, staff, faculty, and administration for their hospitality, and we com-

## I. Refused Jury Instruction

■■■ The proper instruction of the jury rests within the sound discretion of the trial court, and we review its decisions for an abuse of discretion. *Wilson v. State,* 842 N.E.2d 443, 446 (Ind.Ct.App. 2006), *trans. denied.* Jury instructions are to be considered as a whole and in reference to each other, and the trial court's ruling will not be reversed unless the instructions, taken as a whole, misstate the law or mislead the jury. *Snell v. State,* 866 N.E.2d 392, 396 (Ind.Ct.App.2007). Further, any error in the refusal of a tendered jury instruction is subject to a harmless-error analysis: before a defendant is entitled to a reversal, he must affirmatively show the error prejudiced his substantial rights. *Id.*

■■■ The purpose of a jury instruction "is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Overstreet v. State,* 783 N.E.2d 1140, 1163 (Ind.2003). "A trial court erroneously refuses to give a tendered instruction, or part of a tendered instruction, if: (1) the instruction correctly sets out the law; (2) the evidence supports the giving of the instruction; and (3) the substance of the tendered instruction is not covered by the other instructions given." *Id.* at 1164. " 'As a general rule, a defendant in a criminal case is entitled to have the jury instructed on any theory of defense which has some foundation in the evidence.' " *Snell,* 866 N.E.2d at 396 (quoting *Howard v. State,* 755 N.E.2d 242, 247 (Ind.Ct.App.2001)). "This is so even if the evidence supporting the defense is weak and inconsistent. The evidence must have some probative value to support the defense." *Id.*

■■■ Barnes argues that the trial court abused its discretion when it refused to give the following jury instruction:

> When an arrest is attempted by means of a forceful and unlawful entry into a citizen's home, such entry represents the use of excessive force, and the arrest cannot be considered peaceable. Therefore, a citizen has the right to reasonably resist the unlawful entry.

Appellant's App. p. 18.

■■■ Barnes's tendered instruction was not covered by the other instructions given. Further, Barnes's instruction is a correct statement of the law. "Indiana law recognizes the right to reasonably resist the unlawful entry of a police officer into a person's home." *Robinson v. State,* 814 N.E.2d 704, 707 (Ind.Ct.App.2004) (citing *Alspach v. State,* 755 N.E.2d 209, 211 (Ind. Ct.App.2001), *trans. denied* ). "[W]here the arrest is attempted by means of a forceful and unlawful entry into a citizen's home, such entry represents the use of excessive force and the arrest cannot be considered peaceable. Therefore, a citizen has the right to reasonably resist the unlawful entry." *Adkisson v. State,* 728 N.E.2d 175, 179 (Ind.Ct.App.2000) (citing *Casselman v. State,* 472 N.E.2d 1310, 1316 (Ind.Ct.App.1985)).

■■■ We must therefore consider whether the evidence supported the giving of the instruction. First, we address whether the evidence reasonably supports the conclusion that Officer Reed's attempted entry into Barnes's apartment was unlawful.

The Fourth Amendment to the Constitution of the United States requires a warrant be issued before a search of a home is conducted in order to protect against unreasonable searches and sei-

mend counsel for the quality of their written    and oral advocacy.

zures. However, public interest occasionally demands greater flexibility than is offered by the warrant requirement, and, as such, certain exigent circumstances, i.e., exceptions, exist. One particular exigent circumstance is "where a violent crime has occurred and entry by the police can be justified as means to prevent further injury or to aid those who have been injured." The State has the burden of proving that exigent circumstances existed in order to overcome the presumption of unreasonableness that accompanies all warrantless home entries.

*Robinson*, 814 N.E.2d at 707–08 (internal citations omitted).

Here, the record does not reveal the existence of any exigent circumstances to justify Officer Reed's warrantless entry into the apartment. Mary told the 911 operator that Barnes had not hit her, and the officers observed Mary's appearance and demeanor when she walked out of the apartment to give Barnes the rest of his property. The evidence does not suggest that Mary was injured and needed aid.

Yet, the State argues that Mary consented to the officer's entry. An argument ensued between Barnes and Officer Reed when Barnes denied the officer entry into the apartment. During the argument, Officer Reed heard Mary say "Richard don't do this." Tr. pp. 24–25. Officer Reed stated that Mary's statements were directed at Barnes, and she was asking him to cooperate with the officers. Tr. p. 58 ("She never said, you know, let them in, she didn't say don't let them in. She ... was more or less trying to get him I think to cooperate."). Officer Reed also testified that Mary never invited him into the apartment. Tr. p. 47. Mary testified that she stated to Barnes "why don't you let them in" and that she "didn't want any problems." Tr. pp. 87–88 ("[I]f letting them in would have kept down any controversy, I didn't have any problem with it.").

Mary's statements were directed at Barnes, and not Officer Reed. Mary's statements are equivocal, and Officer Reed did not consider her statements as an invitation to enter the apartment. Considering Mary's statements in the context in which they were made, we conclude that Mary's statements were simply a plea to Barnes to cooperate with Officer Reed, rather than an invitation for the officer to enter the apartment. *Cf. Allen v. State*, 743 N.E.2d 1222, 1229 n. 10 (Ind.Ct.App. 2001), *trans. denied* (noting that the State's burden to prove consent to search is not satisfied "by showing a mere submission to a claim of lawful authority"); *see also Georgia v. Randolph*, 547 U.S. 103, 126, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006) ("[A] warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident.") For all of these reasons, we conclude that the evidence reasonably supports the conclusion that Officer Reed's attempted entry into Barnes's apartment was unlawful.

Moreover, there is evidence in the record from which a jury could reasonably conclude that Barnes exercised his right to reasonably resist the unlawful entry. Barnes repeatedly told the officers that they could not enter his apartment. When Officer Reed attempted to enter the apartment, Barnes shoved Officer Reed out of the doorway.

■ Citing *Robinson*, the State argues that the instruction should not have been given because a defendant may not resist unlawful entry by battering a police officer. In *Robinson*, police officers responding to a 911 call of a possible domestic disturbance, refused to leave the premises

after Robinson told them to leave. When an officer attempted to come onto the porch of the residence, Robinson pushed the officer off of the porch. Robinson appealed his conviction for battery on a law enforcement officer, and we concluded that Robinson's act of pushing the officer off of his porch was not reasonable resistance. 814 N.E.2d at 708. Specifically, we stated "[t]he right to reasonably resist an unlawful entry does not include the right to commit a battery upon a police officer." *Id.*

However, our court also stated: "there can be a fine line between reasonable resistance and battery, *but that is for the jury to resolve.*" *Id.* at 709 (emphasis added). Therefore, whether Barnes's act of shoving Officer Reed out of the doorway of his apartment was battery or "reasonable resistance" is a fact question for the jury to resolve.

Importantly, Barnes's theory of defense concerning the battery and resisting law enforcement charges was the right to resist unlawful entry into his apartment. *See* Tr. pp. 11–12, 210–12. The jury would have been properly informed of Barnes's right to "reasonably resist" Officer Reed's unlawful entry if the instruction had been given. Because the evidence supported the giving of the instruction, and Barnes's theory of defense had some foundation in the evidence, the jury's decision may have been different had it received Barnes's tendered instruction. For these reasons, the fact that the jury was not instructed on this particular defense cannot be said to be harmless error. Barnes is therefore entitled to a new trial on the charges of battery on a law enforcement officer and resisting law enforcement.

## II. Insufficient Evidence

Because of the extremely fact-sensitive nature of Indiana law in the areas of Barnes's convictions, we believe it is particularly important to address Barnes's arguments as to the sufficiency of the evidence supporting his convictions. Our standard of review of a claim of insufficient evidence is well settled. When we review the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State,* 867 N.E.2d 144, 146 (Ind.2007). Moreover, we will not reweigh the evidence or judge the credibility of the witnesses, and will respect the jury's "exclusive province to weigh conflicting evidence." *McHenry v. State,* 820 N.E.2d 124, 126 (Ind.2005). When confronted with conflicting evidence, we must consider it in a light most favorable to the conviction. *Id.* We will affirm the conviction unless no reasonable factfinder could have found the elements of the crime proven beyond a reasonable doubt. *Id.*

### A. *Disorderly Conduct*

To prove that Barnes committed Class B misdemeanor disorderly conduct, the State was required to show that Barnes knowingly, recklessly or intentionally made unreasonable noise and continued to do so after being asked to stop. Ind.Code § 35–45–1–3 (2004); *see also* Appellant's App. p. 24. Barnes argues that his speech was political speech, which is protected by Article 1, Section 9 of the Indiana Constitution, and therefore, the evidence is insufficient to support his conviction.

Article 1, Section 9 of the Indiana Constitution provides: "No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: but for the abuse of that right, every person shall be responsible." We employ a two-part analysis to determine whether the State has violated

the free speech protections found in Article 1, Section 9. *Blackman v. State*, 868 N.E.2d 579, 584 (Ind.Ct.App.2007), *trans. denied.* "First, we must determine whether state action has restricted a claimant's expressive activity; second, if it has, we must decide whether the restricted activity constituted an 'abuse' of the right to speak." *Id.* at 584–85.

Here, Barnes was arrested, charged, and convicted of disorderly conduct. Therefore, he has established that the State restricted his expressive activity. *See id.* at 585 (citing *Johnson v. State*, 719 N.E.2d 445, 449 (Ind.Ct.App.1999) (holding that a defendant's conviction for making unreasonable noise during a police investigation constitutes a state action restricting the claimant's expressive activity)).

Under the second prong, we generally review the State's determination that a defendant's expression was an abuse of the right of free speech only for whether that determination was rational. *Id.* at 585. However, if the speech was political in nature, the State must demonstrate that it did not materially burden the defendant's opportunity to engage in political expression. *Id.*

"Expressive activity is political if its aim is to comment on government action, including criticism of an official acting under color of law." *Id.* If an individual's expression focuses on the conduct of a private party, including the speaker himself, it is not political. *Id.* In the context of confrontations with police officers, a speaker's defense of his or her own conduct generally is not political. *Shoultz v. State*, 735 N.E.2d 818, 826 (Ind.Ct.App.2000), *trans. denied.*

The defendant bears the burden of proving that the speech was political.[2] *Blackman*, 868 N.E.2d at 585. If the defendant successfully demonstrates that his speech was political, the State must prove that it did not materially burden the defendant's opportunity to engage in political expression. *Id.* The State can do so by producing evidence that the expression inflicted particularized harm analogous to tortious injury on readily identifiable private interests, or in other words, that the expression caused actual discomfort to persons of ordinary sensibilities or that it interfered with an individual's comfortable enjoyment of his or her privacy. *Id.* "Evidence of mere annoyance or inconvenience is not sufficient." *Id.*

In this case, the officers testified that after Officer Reed verified Barnes's identity, Barnes began yelling that the officer was not needed, there was no reason for the officer to be there, and the officer could return to his car and leave. Tr. pp. 17–18, 148. After the officer threatened to arrest Barnes for disorderly conduct if he did not quiet down, Barnes replied, "if you lock me up for disorderly conduct, you're going to be sitting right next to me in a jail cell." Tr. p. 18. The State appropriately concedes that Barnes's speech was political. Appellee's Br. at 7 ("These statements are remarks about the need for a police investigation and the legality of the proposed arrest for disorderly conduct and are, therefore, political in nature."). *See also Johnson v. State*, 747 N.E.2d 623, 630 (Ind.Ct.App.2001) (holding that the defendant's statement that the officer did not have a reason to be there and that he did not have a warrant was protected political speech). We conclude that Barnes was commenting on the conduct of an official

---

2. If the speech is ambiguous, we will conclude that the expression was not political and must review the State's restriction of the expression under standard rational basis review. *Blackman*, 868 N.E.2d at 585.

acting under color of law, and therefore, his speech was protected political speech.

In *Price v. State*, 622 N.E.2d 954, 964 (Ind.1993), our supreme court concluded that any harm caused by the defendant's political speech did not rise "above the level of fleeting annoyance." In the *Price* case, there were a large number of officers and civilians assembled in the alley where Price was yelling profanities at the officers. Because the commotion had arisen before Price's arrival, the court concluded "that the link between her expression and any harm that was suffered was [not] established." *Id.*

Yet, noisy political expression is not shielded from all criminal liability. *Madden v. State*, 786 N.E.2d 1152, 1157 (Ind. Ct.App.2003), *trans. denied* (citing *Price*, 622 N.E.2d at 964). In *J.D. v. State*, our supreme court held:

> J.D.'s alleged political speech consisted of persistent loud yelling over and obscuring of Deputy Gibbons's attempts to speak and function as a law enforcement officer. Because it obstructed and interfered with Deputy Gibbons, J.D.'s alleged political speech clearly amounted to an abuse of the right to free speech and thus subjected her to accountability under Section 9.

859 N.E.2d 341, 344 (Ind.2007).

In *Martin v. State*, 908 N.E.2d 285, 289 (Ind.Ct.App.2009), we concluded that the defendant abused his right of free speech when he created unreasonable noise at a work release facility for "four virtually continuous hours," disturbed the facility employees with his conduct, and caused employees to interrupt their regular duties to deal with him. We held, "even if Martin's speech was 'political' his disturbance was more than a mere fleeting annoyance and it interfered with the duties of the facility's employees." *Id.*; *see also Blackman*, 868 N.E.2d at 588 ("The right to speak is undeniably a right of paramount importance under our Constitution. That said however, individuals who have expressed opinions, even protected opinions, must quiet down thereafter to enable police officers to do their work.").[3]

Here, the State argues that the volume of Barnes's speech was an "abuse" of his right to free speech because it "disrupted his neighbors' quiet enjoyment of their homes."[4] Appellee's Br. at 8. Officer Reed testified that Barnes was upset and yelling at the officer. Barnes was twice told to lower his voice but continued to yell. The officer then told Barnes that he was going to arrest Barnes for disorderly conduct if he continued to yell. The officer testified that Barnes did lower his voice at that point. Tr. p. 18. There were children outside playing and other residents of the apartment complex standing outside. The officer stated that with Barnes's "loud voice, ... people are starting to, you know, stare and look at us a little bit...." Tr. p. 20.

Our review of the record leads us to the conclusion that Barnes's yelling was fairly brief in duration. Also, Barnes quieted down after he was told he would be arrested for disorderly conduct if he continued to yell. This evidence establishes only that Barnes's yelling may have briefly dis-

---

**3.** In his concurring opinion in *Blackman*, Judge Kirsch stated his belief that our supreme court's opinion in *J.D. v. State* "tacitly overrules" its prior opinion in *Price*. Judge Kirsch noted that "[t]here is no discussion in *J.D.* of core values or material burdens, only the conclusion that J.D. had abused the right of free expression." *Blackman*, 868 N.E.2d at 588–89 (Kirsch, J., concurring).

**4.** In its brief, the State does not argue that Barnes's speech interfered with Officer Reed's investigation.

turbed the residents of the apartment complex who were standing outside. There was no evidence presented that the volume of Barnes's speech caused residents to leave their apartments to observe what was occurring or that his conduct was of such long duration as to interfere with the official business of the officers or the normal business of neighbors or passers-by.

Under the facts and circumstances before us, we conclude that the State failed to prove that Barnes's political expression rose to the level of disorderly conduct.[5] We therefore reverse his Class B misdemeanor disorderly conduct conviction and remand this case to the trial court with instructions to vacate the conviction.

B. *Battery on a Law Enforcement Officer and Resisting Law Enforcement Convictions*

▮▮▮ Barnes also argues that the evidence is insufficient to support his Class A misdemeanor battery on a law enforcement officer and resisting law enforcement convictions.[6]

To prove that Barnes committed Class A misdemeanor battery on a law enforcement officer, the State was required to establish that Barnes knowingly or intentionally touched a law enforcement officer in a rude, insolent, or angry manner, while the officer was engaged in the execution of his official duty. Ind.Code § 35–42–2–1 (2004). The State alleged that Barnes bat-

tered Officer Reed by "shoving him into a door." Appellant's App. p. 24.

Barnes does not dispute the evidence establishing that he shoved Officer Reed into a door while the officer was attempting to investigate Mary's 911 call. Rather, he argues that his conduct was a lawful response to the officer's unlawful entry into his apartment.

Barnes also argues that his Class A misdemeanor resisting law enforcement conviction is not supported by the evidence. After Barnes shoved Officer Reed, the officers attempted to place him under arrest, but Barnes continued to struggle even after he was told to stop resisting until he was restrained through use of a taser. Once again, Barnes does not dispute that he continued to struggle with the officers after they entered the apartment. He argues that his conduct was a lawful response to the officers' attempted unlawful entry into his apartment.

Because the jury was not properly instructed on Barnes's right to reasonably resist unlawful entry into his home, we reverse Barnes's Class A misdemeanor battery on a law enforcement officer and resisting law enforcement convictions. We remand this case to the trial court for a new trial on those charges, and observe that it is within the exclusive province of the jury to determine whether Barnes "reasonably resisted" Officer Reed's attempt to unlawfully enter his apartment when he shoved the officer away from the

---

5. The State's reliance on *Whittington v. State*, 669 N.E.2d 1363 (Ind.1996) is misplaced. In that case, our supreme court concluded that the defendant's speech was not political and noted the defendant's testimony that his remarks were not directed toward law enforcement, but to his sister's boyfriend. Therefore, the court applied the less stringent rational basis review to determine whether Whittington had abused his right to speak. *Id.* at 1371.

6. We concluded in the preceding section that the jury was not properly instructed on Barnes's defense to these charges, and therefore, Barnes is entitled to a new trial for battery on a law enforcement officer and resisting law enforcement. Because Barnes may be retried only if the evidence is sufficient to support those convictions, we also address his claim of insufficient evidence.

threshold of his home and continued to resist after both officers attempted to arrest him.

## Conclusion

We reverse Barnes's disorderly conduct conviction because the State failed to prove that Barnes's noisy political expression was an abuse of his right to free speech. We also reverse Barnes's convictions for battery on a law enforcement officer and resisting law enforcement, but we remand for a new trial on those convictions because the jury was not properly instructed on Barnes's defense of the right to reasonably resist unlawful entry into his home.

Reversed and remanded for proceedings consistent with this opinion.

CRONE, J., and BROWN, J., concur.