ATTORNEY FOR APPELLANT
Erin L. Berger
Evansville, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Karl M. Scharnberg
Deputy Attorney General
Indianapolis, Indiana



In the

# Indiana Supreme Court

No. 82S05-1007-CR-343

RICHARD L. BARNES,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Vanderburgh Superior Court, No. 82D02-0808-CM-759
The Honorable Mary Margaret Lloyd, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 82A05-0910-CR-592

**May 12, 2011**

**David, Justice.**

A jury convicted Richard Barnes of Class A misdemeanor battery on a law enforcement officer, Class A misdemeanor resisting law enforcement, and Class B misdemeanor disorderly conduct. Barnes contests that the trial court's failure to advise the jury on the right to reasonably resist unlawful entry by police officers constituted reversible error and that the evidence was insufficient to sustain his convictions. We hold that there is no right to reasonably resist unlawful entry by police officers. We further hold that the evidence was sufficient and affirm Barnes's convictions.

**Facts and Procedural History**

On November 18, 2007, Richard Barnes argued with his wife Mary Barnes as he was moving out of their apartment. During the argument, Mary tried to call her sister but Barnes grabbed the phone from her hand and threw it against the wall. Mary called 911 from her cell phone and informed the dispatcher that Barnes was throwing things around the apartment but that he had not struck her. The 911 dispatch went out as a "domestic violence in progress."

Officer Lenny Reed, the first responder, saw a man leaving an apartment with a bag and began questioning him in the parking lot. Upon identifying the man as Barnes, Reed informed him that officers were responding to a 911 call. Barnes responded that he was getting his things and leaving and that Reed was not needed. Barnes had raised his voice and yelled at Reed, prompting stares from others outside and several warnings from Reed.

Officer Jason Henry arrived on the scene and observed that Barnes was "very agitated and was yelling." Barnes "continued to yell, loudly" and did not lower his voice until Reed warned that he would be arrested for disorderly conduct. Barnes retorted, "if you lock me up for Disorderly Conduct, you're going to be sitting right next to me in a jail cell." Mary came onto the parking lot, threw a black duffle bag in Barnes's direction, told him to take the rest of his stuff, and returned to the apartment. Reed and Henry followed Barnes back to the apartment. Mary entered the apartment, followed by Barnes, who then turned around and blocked the doorway. Barnes told the officers that they could not enter the apartment and denied Reed's requests to enter and investigate. Mary did not explicitly invite the officers in, but she told Barnes several times, "don't do this" and "just let them in." Reed attempted to enter the apartment, and Barnes shoved him against the wall. A struggle ensued, and the officers used a choke hold and a taser to subdue and arrest Barnes. Barnes suffered an adverse reaction to the taser and was taken to the hospital.

Barnes was charged with Class A misdemeanor battery on a police officer, Class A misdemeanor resisting law enforcement, Class B misdemeanor disorderly conduct, and Class A misdemeanor interference with the reporting of a crime. Before the trial, Barnes tendered a jury

2

instruction on the right of a citizen to reasonably resist unlawful entry into the citizen's home.[1] The trial court refused Barnes's instruction and did not otherwise instruct the jury as to the right to reasonably resist. The jury found Barnes guilty of battery on a police officer, resisting law enforcement, and disorderly conduct.

Barnes appealed, challenging the trial court's refusal to give his tendered jury instruction and the sufficiency of the evidence supporting his convictions. The Court of Appeals found that the trial court's refusal of Barnes's tendered jury instruction was not harmless error. Barnes v. State, 925 N.E.2d 420, 426 (Ind. Ct. App. 2010). The Court of Appeals also found that the evidence was insufficient to sustain the disorderly conduct conviction. Id. at 426–29. The Court of Appeals therefore ordered a new trial on the battery and resisting charges. Id. at 429. We granted transfer.

### I. Jury Instruction

Barnes contests that his tendered jury instruction should have been given because it was a correct statement of a viable legal defense supported by the facts and because that defense was not covered by the other instructions. We acknowledge that the Court of Appeals followed its own precedents in its analysis. Now this Court is faced for the first time with the question of whether Indiana should recognize the common-law right to reasonably resist unlawful entry by police officers. We conclude that public policy disfavors any such right. Accordingly, the trial court's refusal to give Barnes's tendered instruction was not error.

The English common-law right to resist unlawful police action existed for over three hundred years, and some scholars trace its origin to the Magna Carta in 1215. Craig Hemmens & Daniel Levin, "Not a Law at All": A Call for the Return to the Common Law Right to Resist Unlawful Arrest, 29 Sw. U. L. Rev. 1, 9 (1999). The United States Supreme Court recognized this right in Bad Elk v. United States, 177 U.S. 529, 535 (1900): "If the officer had no right to arrest, the other party might resist the illegal attempt to arrest him, using no more force than was

---

[1] Barnes's tendered instruction is as follows:

> When an arrest is attempted by means of a forceful and unlawful entry into a citizen's home, such entry represents the use of excessive force, and the arrest cannot be considered peaceable. Therefore, a citizen has the right to reasonably resist the unlawful entry.

absolutely necessary to repel the assault constituting the attempt to arrest." The Supreme Court has affirmed this right as recently as 1948. United States v. Di Re, 332 U.S. 581, 594 (1948) ("One has an undoubted right to resist an unlawful arrest, and courts will uphold the right of resistance in proper cases.").

In the 1920s, legal scholarship began criticizing the right as valuing individual liberty over physical security of the officers. Hemmens & Levin, supra, at 18. One scholar noted that the common-law right came from a time where "resistance to an arrest by a peace officer did not involve the serious dangers it does today." Sam B. Warner, The Uniform Arrest Act, 28 Va. L. Rev. 315, 330 (1942). The Model Penal Code eliminated the right on two grounds: "(1) the development of alternate remedies for an aggrieved arrestee, and (2) the use of force by the arrestee was likely to result in greater injury to the person without preventing the arrest." Hemmens & Levin, supra, at 23. In response to this criticism, a majority of states have abolished the right via statutes in the 1940s and judicial opinions in the 1960s. Id. at 24–25.

The Court of Appeals addressed this issue in Casselman v. State, 472 N.E.2d 1310, 1318 (Ind. Ct. App. 1985). In Casselman, the defendant did not appear at a judgment proceeding on the advice of his attorney. Id. at 1311. When the sheriff's deputy went to his home to effect a civil arrest, the defendant attempted to close the door in the deputy's face. A brief struggle ensued, and the defendant was arrested when he retreated into his house. Id. at 1311–12. The Court of Appeals found that the deputy "was not lawfully engaged in the execution of civil process" when he prevented the defendant from closing the door to his home. Id. at 1314. Although the Court of Appeals acknowledged the trend of abolishing the common-law right to resist an unlawful arrest, it ultimately focused on the heightened expectation of privacy in one's home and recognized a right to resist an unlawful entry into a home by a police officer. Id. at 1315–18.

We believe however that a right to resist an unlawful police entry into a home is against public policy and is incompatible with modern Fourth Amendment jurisprudence. Nowadays, an aggrieved arrestee has means unavailable at common law for redress against unlawful police action. E.g., Warner, supra, at 330 (citing the dangers of arrest at common law—indefinite detention, lack of bail, disease-infested prisons, physical torture—as reasons for recognizing the

4

right to resist); State v. Hobson, 577 N.W.2d 825, 835–36 (Wis. 1998) (citing the following modern developments: (1) bail, (2) prompt arraignment and determination of probable cause, (3) the exclusionary rule, (4) police department internal review and disciplinary procedure, and (5) civil remedies). We also find that allowing resistance unnecessarily escalates the level of violence and therefore the risk of injuries to all parties involved without preventing the arrest— as evident by the facts of this instant case. E.g., Hobson, 577 N.W.2d at 836 ("But in arrest situations that are often ripe for rapid escalation, one's 'measured' response may fast become excessive."). Further, we note that a warrant is not necessary for every entry into a home. For example, officers may enter the home if they are in "hot pursuit" of the arrestee or if exigent circumstances justified the entry. E.g., United States v. Santana, 427 U.S. 38, 42–43 (1976) (holding that retreat into a defendant's house could not thwart an otherwise proper arrest made in the course of a "hot pursuit"); Holder v. State, 847 N.E.2d 930, 938 (Ind. 2006) ("Possible imminent destruction of evidence is one exigent circumstance that may justify a warrantless entry into a home if the fear on the part of the police that the evidence was immediately about to be destroyed is objectively reasonable."). Even with a warrant, officers may have acted in good faith in entering a home, only to find later that their entry was in error. E.g., Arizona v. Evans, 514 U.S. 1, 11 (1994); United States v. Leon, 468 U.S. 897, 922–25 (1984). In these situations, we find it unwise to allow a homeowner to adjudge the legality of police conduct in the heat of the moment. As we decline to recognize a right to resist unlawful police entry into a home, we decline to recognize a right to batter a police officer as a part of that resistance.

Here, the trial court's failure to give the proffered jury instruction was not error. Because we decline to recognize the right to reasonably resist an unlawful police entry, we need not decide the legality of the officers' entry into Barnes's apartment. We note, however, that the officers were investigating a "domestic violence in progress" in response to a 911 call. A 911 call generally details emergency or exigent circumstances requiring swift police action. In these cases, the officers are responding to rapidly changing or escalating events, and their initial response is often based on limited information. The officers cannot properly assess the complaint and the dangers to those threatened without some limited access to the involved parties. It is unrealistic to expect officers to wait for threats to escalate and for violence to become imminent before intervening. Here, the officers acted reasonably under the totality of the circumstances.

In sum, we hold that Indiana the right to reasonably resist an unlawful police entry into a home is no longer recognized under Indiana law. Accordingly, the trial court's failure to give Barnes's proffered jury instruction on this right was not error.

## II. Sufficiency of Evidence

Barnes challenges the sufficiency of the evidence to support his conviction for Class A misdemeanor battery on a police officer, Class A misdemeanor resisting law enforcement, and Class B misdemeanor disorderly conduct. The standard of review for sufficiency-of-evidence claims is well settled. We neither reweigh the evidence nor judge the credibility of the witnesses, and we respect "the jury's exclusive province to weigh conflicting evidence." Alkhalidi v. State, 753 N.E.2d 625, 627 (Ind. 2001). We "consider only the probative evidence and reasonable inferences supporting the verdict." McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005). We affirm "if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt." Tobar v. State, 740 N.E.2d 109, 112 (Ind. 2000).

### A. *Disorderly Conduct*

To prove that Barnes committed Class B misdemeanor disorderly conduct, the State needed to prove that Barnes recklessly, knowingly, or intentionally made unreasonable noise and continued to do so after being asked to stop. Ind. Code § 35-45-1-3(a)(2) (2004). Because one's conduct or expression may be free speech protected under the Indiana Constitution, an application of the disorderly conduct statute must pass constitutional scrutiny. We employ a two-step inquiry in reviewing the constitutionality of an application of the disorderly conduct statute: we (1) "determine whether state action has restricted a claimant's expressive activity" and (2) "decide whether the restricted activity constituted an 'abuse' of the right to speak." Whittington v. State, 669 N.E.2d 1363, 1367 (Ind. 1996). The first prong may be satisfied based solely on the police restricting a claimant's loud speaking during a police investigation. Id. at 1370. The second prong hinges on whether the restricted expression constituted political speech. Id. at 1369–70. If the claimant demonstrates under an objective standard that the impaired expression was political speech, the impairment is unconstitutional unless the State demonstrates that the "magnitude of the impairment" is slight or that the speech amounted to a public nuisance

such that it "inflict[ed] 'particularized harm' analogous to tortious injury on readily identifiable private interests." Id. (quoting Price v. State, 622 N.E.2d 954, 964 (Ind. 1993)). If the expression, viewed in context, is ambiguous, it is not political speech, and we evaluate the constitutionality of the impairment under standard rationality review. Id. at 1370. Here, Barnes argues that his speech—i.e., his yelling at and threats to the investigating officers—constituted protected political speech.

We resolved an analogous issue in a juvenile case in J.D. v. State, 859 N.E.2d 341 (Ind. 2007). In J.D., an officer investigating a complaint against the juvenile approached her to find a peaceable solution, with an arrest as "the last resort." Id. at 343. The juvenile loudly interrupted the officer's attempts to speak to her and did not respond to requests to "stop hollering." Id. After she was threatened with arrest, she continued to speak over the officer and was arrested. Id. The juvenile challenged the sufficiency of the evidence supporting the trial court's adjudication of delinquency for commission of disorderly conduct, arguing that her conduct was protected political speech. Id. at 343–44. We distinguished the facts of J.D. with that of Price, where the defendant loudly objected to the arrest of another person and the officers' threats to arrest her for her protest. Id. at 344. We found that in Price, "the defendant's speech did not obstruct or interfere with the police," whereas the juvenile's alleged political speech in J.D. hampered the officer's ability to perform his law enforcement duties. Id. We believe the facts of the present case are closer to the facts in J.D. Barnes's speech in the present case is that of a person of interest refusing to cooperate with a police investigation and is not within the contours of political speech contemplated by Price. Even assuming Barnes's conduct was political speech, the "magnitude of impairment" is de minimis. Accordingly, Barnes's yelling at the officers, even after they warned him to calm down, was sufficient to sustain his disorderly conduct conviction.

B. *Battery on a Law Enforcement Officer*

To prove that Barnes committed Class A misdemeanor battery on a law enforcement officer, the State needed to demonstrate that Barnes knowingly or intentionally touched the officer in a rude, insolent, or angry manner while the officer was engaged in the execution of his official duty. I.C. § 35-42-2-1(a)(1)(B). The State argues that Barnes battered Officer Reed by

"shoving him into a door." Barnes does not dispute the evidence establishing that he shoved Reed, who was responding to Mary's 911 call, but he argues that his conduct was a lawful response to Reed's allegedly unlawful entry into his apartment. Because we decline to recognize the right of a homeowner to reasonably resist unlawful entry, Barnes is not entitled to batter Reed, irrespective as to the legality of Reed's entry.

C. *Resisting Arrest*

To prove that Barnes committed Class A resisting arrest, the State needed to demonstrate that Barnes knowingly or intentionally forcibly resisted, obstructed, or interfered with a law enforcement officer while the officer was lawfully engaged in the execution of his duties. I.C. § 35-44-3-3(a). The State argues that Barnes struggled with the officers and resisted their attempt to arrest him for battering Reed. As before, Barnes does not dispute his struggle with the officers but contests that his conduct was a lawful response to the officers' allegedly unlawful entry into his apartment. Because Barnes is not entitled to resist the entry of the officers, his battery on Reed was sufficient grounds for his arrest, and the uncontroverted fact that he resisted the arrest was sufficient to sustain his conviction.

**Conclusion**

Barnes's conviction and sentence are affirmed.

Shepard, C.J., and Sullivan, J., concur.

Dickson, J. dissents with a separate opinion.

Rucker, J. dissents with a separate opinion in which Dickson, J. concurs.

8

**Dickson, Justice, dissenting.**

Acknowledging the historic common-law right to reasonably resist unlawful entry by police officers, the majority tethers its abrogation of this right on (a) modern developments that have diminished the dangers of arrest at common law (e.g., indefinite detention, lack of bail, disease-infested prisons, physical torture), (b) the desire to minimize the risk of the level of violence and risk of injuries, and (c) the rights of police to enter a home even without a warrant under certain circumstances. But the consistent existence of and adherence to many of these factors unfortunately remains less than ideal. Courts continue to see claims alleging excessive preliminary detention, failure to promptly set bail, and excessive use of force by police.

In my view, the wholesale abrogation of the historic right of a person to reasonably resist unlawful police entry into his dwelling is unwarranted and unnecessarily broad. The case before us involves police action in response to a report of domestic violence in progress. Such events present a heightened urgency for police presence for the protection of the dwelling's occupants and to diffuse enraged emotions and animosity. It would have been preferable, in my view, for the Court today to have taken a more narrow approach, construing the right to resist unlawful police entry, which extends only to *reasonable* resistance, by deeming *unreasonable* a person's resistance to police entry in the course of investigating reports of domestic violence. Such a formulation would have been more appropriate for the facts presented and more consistent with principles of judicial restraint. Such a more cautious revision of the common law would have, in cases not involving domestic violence, left in place the historic right of people to reasonably resist unlawful police entry into their dwellings.

**Rucker, Justice, dissenting.**

The majority has made a respectable case supporting the proposition that the common law rule entitling a person to resist an unlawful arrest is outmoded in our modern society. But this proposition is not new. The Court of Appeals reached the same conclusion over three decades ago. "[A] private citizen may not use force in resisting a peaceful arrest by an individual who he knows, or has reason to know, is a police officer performing his duties *regardless of whether the arrest in question is lawful or unlawful*." Williams v. State, 311 N.E.2d 619, 621 (Ind. Ct. App. 1974) (emphasis added). A product of the English common law, the rule permitting resistance to unlawful arrest was based on the premise that everyone should be privileged to use reasonable force to prevent an unlawful invasion of his physical integrity and personal liberty. Fields v. State, 382 N.E.2d 972, 975-76 (Ind. Ct. App. 1978). And the rule arose during a time when self-help was a more necessary remedy to resist intrusions upon one's freedom. As the Fields court explained, "[it] was developed largely during a period when most arrests were made by private citizens, when bail for felonies was usually unattainable, and when years might pass before the royal judges arrived for a jail delivery." Id. at 976 (quoting Sam B. Warner, The Uniform Arrest Act, 28 Va. L. Rev. 315, 315 (1942)). However, "[t]he common law right of forceful resistance to an unlawful arrest tends to promote violence and increases the chances of someone getting injured or killed." Id. at 975. Thus, largely for the reasons the majority explains the considerations underlying the right to resist arrest are no longer applicable for the twenty-first century or, for that matter, the twentieth century.

But the common law rule supporting a citizen's right to resist unlawful entry into her home rests on a very different ground, namely, the Fourth Amendment to the United States Constitution. Indeed, "the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." Payton v. New York, 445 U.S. 573, 585 (1980). In my view it is breathtaking that the majority deems it appropriate or even necessary to erode this constitutional protection based on a rationale addressing much different policy considerations. There is simply no reason to abrogate the common law right of a citizen to resist the unlawful police entry into his or her home.

In <u>Miller v. United States</u>, 357 U.S. 301, 313-14 (1958) the United States Supreme Court held that it was unlawful to arrest the defendant on criminal charges when a warrantless arrest was conducted by police officers breaking and entering the defendant's apartment without expressly announcing the purpose of their presence or demanding admission. In recounting the historical perspective for its holding the Court quoted eighteenth century remarks attributed to William Pitt, Earl of Chatham, on the occasion of a debate in Parliament:

> The poorest man may in his cottage bid defiance to all the forces of the Crown. It may be frail; its roof may shake; the wind may blow through it; the storm may enter; the rain may enter; but the King of England cannot enter – all his force dares not cross the threshold of the ruined tenement!

<u>Id.</u> at 307. The same is no less true today and applies equally to forces of the State.

At issue in this case is not whether Barnes had the right to resist unlawful police entry into his home – a proposition that the State does not even contest – but rather whether the entry was illegal in the first place, and if so, whether and to what extent Barnes could resist entry without committing a battery upon the officer. Federal Fourth Amendment jurisprudence is equal to the task of resolving these issues.[2] In my view the majority sweeps with far too broad a brush by essentially telling Indiana citizens that government agents may now enter their homes illegally – that is, without the necessity of a warrant, consent, or exigent circumstances. And that their sole remedy is to seek refuge in the civil arena. I disagree and therefore respectfully dissent.

Dickson, J., concurs.

---

[2] Indeed a respectable argument could be made that police response to a report of domestic violence is an exigent circumstance justifying entry into a home without a search warrant.

2