## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
May 09 2018, 5:47 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Zachary J. Stock
Zachary J. Stock, Attorney at Law, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Michael Gene Worden
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| P.R.M., <br> *Appellant-Respondent,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Petitioner.* | May 9, 2018 <br><br> Court of Appeals Case No. 32A04-1710-JV-2301 <br><br> Appeal from the Hendricks Superior Court <br><br> The Honorable Karen M. Love, Judge <br><br> Trial Court Cause No. 32D03-1706-JD-130 |

**Bailey, Judge.**

[1] The juvenile court adjudicated P.R.M. delinquent after finding that he committed an act that would be dealing in a controlled substance if committed by an adult.[1] P.R.M. raises two arguments on appeal, one of which we find dispositive: P.R.M. contends that the evidence is insufficient to support the adjudication. We agree, and reverse.

## Facts[2]

[2] On May 23, 2017, Brownsburg High School assistant principal Demetrius Dowler noticed an unusual number of boys enter one of the school's restrooms, so he followed them in to investigate. Dowler saw P.R.M. standing in the doorway of a restroom stall, passing a baggie to G.S. Dowler did not see what was in the bag. G.S. later testified that he purchased three Adderall pills from P.R.M. for twenty dollars and then swallowed them.

[3] Dowler then left the restroom to wait outside for P.R.M.; he also called an "officer for back up." Tr. Vol. II p. 17. When P.R.M. exited the restroom, Dowler told him that he had seen something inappropriate and escorted him to the office of Adam Poliskie, another assistant principal. Dowler told Poliskie of the exchange he had seen in the restroom. Dowler then took G.S. to his own office. G.S. tried to dispose of the empty bag along the way, but another staff

---

[1] Ind. Code § 35-48-4-2(a)(1)(C).

[2] We heard oral argument at South Dearborn High School on April 12, 2018. We thank the school's administration, faculty, and students, and the Dearborn County Bar Association, for their gracious hospitality. We also thank counsel for their informative and engaging oral advocacy and subsequent discussion with the students.

member confiscated it. Dowler searched G.S. but did not find anything on him.

[4] Poliskie questioned P.R.M. for twenty to thirty minutes about what had occurred in the restroom. P.R.M. said that G.S. had purchased video game passcodes and denied that anything illegal had been exchanged. School officials searched P.R.M.'s backpack for pills, and although they did not find any, his backpack "did contain materials that led to [a] drug screening." *Id.* at 29. After Poliskie took P.R.M. to the school clinic for a drug screen, P.R.M. asked to speak with his guardian. Poliskie continued to talk with P.R.M. while they waited for P.R.M.'s guardian to pick him up. At some point in their conversation, P.R.M. said "what if I had just given the pills to another student, would we still be sitting here." *Id.*

[5] On June 26, 2017, the State filed a petition alleging P.R.M. had committed a delinquent act that would constitute dealing in a schedule II controlled substance if committed by an adult. A factfinding hearing took place on August 31, 2017. During the hearing, G.S. testified that he purchased three Adderall pills from P.R.M. for twenty dollars; that he had taken Adderall twice before; and that he swallowed all three pills after the purchase. When asked to describe how Adderall pills look, G.S. testified that "[t]hey were blue and circular." *Id.* at 7. The juvenile court found the allegation true and adjudicated P.R.M. delinquent. The juvenile court awarded wardship over P.R.M. to the Indiana Department of Correction, suspended that commitment, and placed P.R.M. on twelve months of supervised probation. P.R.M. now appeals.

# Discussion and Decision

[6] Although P.R.M. makes two arguments on appeal, we find his argument that the evidence is insufficient to be dispositive. In resolving a claim that the evidence supporting an adjudication of juvenile delinquency is insufficient, we apply the standard of review that applies to all sufficiency matters. *Johnson v. State*, 719 N.E.2d 445, 448 (Ind. Ct. App. 1999). Accordingly, we consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not reweigh the evidence or assess the credibility of witnesses, and we consider conflicting evidence most favorably to the trial court's ruling. *Id.* We will affirm the conviction unless no reasonable trier of fact could find the elements of the offense proven beyond a reasonable doubt. *Id.* It is generally not necessary that the evidence overcomes "every reasonable hypothesis of innocence." *Id.* at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the adjudication. *Id.*

[7] The State is not required to introduce the actual contraband into evidence to obtain a conviction for dealing. *Helton v. State*, 907 N.E.2d 1020, 1024 (Ind. 2009). Instead, the identity and quantity of a controlled substance may be established through witness testimony and circumstantial evidence. *Id.* This type of circumstantial evidence can include the testimony of someone experienced with the drug who identifies the substance. *Clifton v. State*, 499 N.E.2d 256, 258 (Ind. 1986). Convictions supported by circumstantial evidence have relied on the testimony of past drug users who actually ingested the drug

in question and identified it based on its effects. *Id.* To affirm a conviction based on this type of circumstantial evidence, the evidence must consist of the opinion testimony of someone sufficiently experienced with the drug. *Id.*

[8] To prove that P.R.M. committed a delinquent act that would constitute dealing in a schedule II controlled substance if committed by an adult, the State was required to prove that he knowingly or intentionally delivered a controlled substance, pure or adulterated, classified in schedule II. I.C. § 35-48-4-2(a)(1)(C).

[9] The evidence elicited at the factfinding hearing was that G.S. and P.R.M. discussed G.S.'s desire to buy Adderall from P.R.M., that G.S. asked P.R.M. to sell him Adderall, and that P.R.M. agreed to do so. G.S. also testified that he purchased three Adderall pills from P.R.M. for twenty dollars; that he had taken Adderall twice before; and that he swallowed all three pills after the purchase. When asked to describe how Adderall pills look, G.S. testified that "[t]hey were blue and circular." Tr. p. 7. This testimony is unclear as to whether G.S. meant the Adderall pills in general are blue and circular, or whether the pills he bought from P.R.M. were blue and circular. If he meant the former, then the record does not include testimony that provides a matching description of the pills G.S. bought and swallowed. If he meant the latter, then the record contains no evidence about what Adderall looks like and whether the pills G.S. bought fit within that description. Further, the record is devoid of evidence that G.S. could recognize Adderall by sight or that twenty dollars is the going rate for three Adderall pills. Even if G.S. had testified to such, his

testimony alone may not have been sufficient evidence. *See Smalley v. State*, 732 N.E.2d 1231, 1236 n.2 (Ind. Ct. App. 2000) (noting that the defendant's and a detective's identification of a substance independently of each other and the other circumstances, which included a chemical analysis, might have been insufficient to prove what the substance was). Additionally, G.S. did not describe the effect of the pills he swallowed or compare that experience to his previous experiences taking Adderall.

[10] Based on this evidence, in order to conclude that P.R.M. sold G.S. Adderall, the factfinder must assume, based on G.S.'s unclear and conclusory testimony, that Adderall pills are blue and circular and that the pills that G.S. ingested were Adderall. Although G.S. testified that he had taken Adderall twice before, this fact, standing alone, does not make him "sufficiently experienced with the drug," such that his testimony supports a conclusion that the pills were, in fact, Adderall. *Clifton*, 499 N.E.2d at 258. *See also Smalley*, 732 N.E.2d at 1235 (noting that the fact that defendant testified that he was a "drug addict" and that the substance was cocaine may not have been, on its own, sufficient evidence that the substance at issue was cocaine). As a result, the evidence is insufficient to allow a factfinder to reasonably infer that the pills at issue were a controlled substance. Accordingly, the evidence is insufficient to support a true finding and must be reversed.

The judgment of the juvenile court is reversed and remanded with instructions to vacate the adjudication.

May, J., and Altice, J., concur.