MARKMAN, J.
(dissenting). I respectfully dissent from the majority’s decision to reverse the judgment of the Court of Appeals and overrule People v Ventura, 262 Mich App 370; 686 NW2d 748 (2004). The only issue here is whether the Legislature abrogated the right to resist police conduct that is later determined to have been unlawful. Before 2002, the Legislature in MCL 750.479 made it unlawful to resist a police officer, but only if that officer was performing what was later determined to constitute a “lawful act.” However, in 2002, the Legislature amended MCL 750.479 and also *59 enacted a new statute addressing this subject, MCL 750.81d, neither of which contains the “lawful act” requirement. By doing this, the Legislature clearly excluded consideration of the lawfulness of the police officer’s conduct as a relevant element in forcibly resisting an officer as long as the police officer was “performing his or her duties,” and it did so “in no uncertain terms.” Therefore, I would affirm the judgment of the Court of Appeals, which, in reliance on Ventura, held that defendant was properly charged with resisting and obstructing a police officer under MCL 750.81d after he physically struggled with officers who had entered his home.[1]
I. LEGISLATIVE ABROGATION
Before 2002, MCL 750.479 provided:
Any person who shall knowingly and wilfully obstruct, resist or oppose any sheriff, coroner, township treasurer, constable or other officer or person duly authorized, in serving, or attempting to serve or execute any process, rule or order made or issued by lawful authority, or who shall resist any officer in the execution of any ordinance, by law, or any rule, order or resolution made, issued, or passed by the common council of any city board of trustees, or common council or village council of any incorporated village, or township board of any township or who shall assault, beat or wound any sheriff, coroner, township treasurer, constable or other officer duly authorized, while serving, or attempting to serve or execute any such process, rule or order, or for having served, or atempted [sic] to serve or execute the same, or who shall so obstruct, resist, oppose, assault, beat or wound any of the above named officers, or any other person or persons authorized by law *60 to maintain and preserve the peace, in their lawful acts, attempts and efforts to maintain, preserve and keep the peace, shall be guilty of a misdemeanor, punishable by imprisonment in the state prison not more than 2 years, or by a fine of not more than 1,000 dollars. [Emphasis added.]
In People v Krum, 374 Mich 356, 361; 132 NW2d 69 (1965), this Court held that “one may use such reasonable force as is necessary to prevent an illegal attachment and to resist an illegal arrest” without violating MCL 750.479. See also People v Clements, 68 Mich 655, 658; 36 NW 792 (1888) (holding that a debtor whose property was seized by a sheriff executing an invalid writ of attachment was not “compelled to submit to such trespass without reasonable resistance” in order to avoid violating 1882 How Stat 9257, a predecessor of MCL 750.479).
In 2002, the Legislature amended MCL 750.479 and enacted MCL 750.81d. MCL 750.479 now provides, in pertinent part:
(1) A person shall not knowingly and willfully do any of the following:
(a) Assault, batter, wound, obstruct, or endanger a medical examiner, township treasurer, judge, magistrate, probation officer, parole officer, prosecutor, city attorney, court employee, court officer, or other officer or duly authorized person serving or attempting to serve or execute any process, rule, or order made or issued by lawful authority or otherwise acting in the performance of his or her duties.
(b) Assault, batter, wound, obstruct, or endanger an officer enforcing an ordinance, law, rule, order, or resolution of the common council of a city board of trustees, the common council or village council of an incorporated village, or a township board of a township.
(2) Except as provided in subsections (3), (4), and (5), a person who violates this section is guilty of a felony *61 punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.
(3) A person who violates this section and by that violation causes a bodily injury requiring medical attention or medical care to an individual described in this section is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $5,000.00, or both.
(4) A person who violates this section and by that violation causes serious impairment of a body function of an individual described in this section is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $10,000.00, or both.
(5) A person who violates this section and by that violation causes the death of an individual described in this section is guilty of a felony punishable by imprisonment for not more than 20 years or a fine of not more than $20,000.00, or both.
(8) As used in this section:
(a) “Obstruct” includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command. [Emphasis added.]
MCL 750.81d provides:
(1) Except as provided in subsections (2), (3), and (4), an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.
(2) An individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties causing a bodily injury requiring medical attention or medical care to that person is guilty of a felony *62 punishable by imprisonment for not more than 4 years or a fine of not more than $5,000.00, or both.
(3) An individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties causing a serious impairment of a body function of that person is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not more than $10,000.00, or both.
(4) An individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties causing the death of that person is guilty of a felony punishable by imprisonment for not more than 20 years or a fine of not more than $20,000.00, or both.
(7) As used in this section:
(a) “Obstruct” includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command.
(b) “Person” means any of the following:
(j) A police officer of this state or of a political subdivision of this state including, but not limited to, a motor carrier officer or capítol security officer of the department of state police.
(ii) A police officer of a junior college, college, or university who is authorized by the governing board of that junior college, college, or university to enforce state law and the rules and ordinances of that junior college, college, or university.
(Hi) A conservation officer of the department of natural resources or the department of environmental quality.
(iv) A conservation officer of the United States department of the interior.
(;v) A sheriff or deputy sheriff.
*63 (yi) A constable.
(vii) A peace officer of a duly authorized police agency of the United States, including, but not limited to, an agent of the secret service or department of justice.
Cviii) A firefighter.
(wc) Any emergency medical service personnel described in section 20950 of the public health code, 1978 PA 368, MCL 333.20950.
(x) An individual engaged in a search and rescue opération as that term is defined in [MCL 750.50c], [Emphasis added.]
MCL 750.81d applies to police officers, firefighters, and emergency medical service personnel, and MCL 750.479 applies to other persons involved with law enforcement, such as judges, prosecutors, and parole officers. Both statutes make it unlawful not only to assault or resist these individuals, but also to endanger them while they are performing their duties. Both statutes also have multitiered penalty structures based on the level of injury suffered.
The question before us concerns whether the rule announced in Clements and reaffirmed in Krum, 374 Mich at 361, that “one may use such reasonable force as is necessary to prevent an illegal attachment and to resist an illegal arrest” remains the rule of law in Michigan in light of the 2002 amendment of MCL 750.479 and the enactment of MCL 750.81d. More specifically, the issue concerns whether a person who forcibly resists a police officer who is unlawfully entering that person’s home may be found guilty of violating MCL 750.81d. I believe that the answer to the latter question must be in the affirmative.
As mentioned earlier, in 2002 the Legislature enacted significant changes to this state’s resisting-and-obstructing laws. Perhaps the most significant change *64 pertained to the elimination of the phrase “in their lawful acts” from MCL 750.479. This language was also notably left out of the newly enacted MCL 750.81d. This is significant because while the former version of MCL 750.479 clearly made it unlawful to resist police officers only if those officers were performing “lawful acts,” the absence of this same language in MCL 750.8Id equally clearly makes it unlawful to resist police officers regardless of whether those officers were performing “lawful acts.”
At the outset, it must be observed that the majority states that the issue here is “whether the Legislature intended to abrogate the common-law right to resist an unlawful arrest with its 2002 enactment of MCL 750.81d,” ante at 44, when it cites no case of any Michigan court in support of the underlying assumption that there was such a common-law right in Michigan. Instead, each case the majority cites supports only the proposition that the pre-2002 versions of MCL 750.479 made it illegal to resist a police officer only if the officer’s actions were “lawful.” See Krum, 374 Mich at 361 (interpreting 1948 CL 750.479), and Clements, 68 Mich at 658 (interpreting 1882 How Stat 9257). That is, in Michigan, pursuant to Krum and Clements, there was a statutory right to resist police officers in their unlawful acts. Ventura, 262 Mich App at 374 (stating that “under MCL 750.479, the right to resist an unlawful arrest was, in essence, a defense to the charge of resisting arrest, because the legality of the arrest was an element of the charged offense”).[2] Therefore, con *65 trary to the majority’s contention, “the rules regarding abrogation of the common law,” ante at 46, are not even clearly relevant here.
However, even assuming that as a legacy of the English common law there was a common-law right to resist unlawful police conduct in Michigan, and therefore that the rules regarding legislative abrogation must be invoked, the Legislature clearly abrogated this common-law right in 2002. “The common law and the statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by'their own limitations, or are changed, amended or repealed.” Const 1963, art 3, § 7. “Whether a statutory scheme preempts, changes, or amends the common law is a question of legislative intent.” Wold Architects & Engineers v Strat, 474 Mich 223, 233; 713 NW2d 750 (2006). However, “the Legislature ‘should speak in no uncertain terms’ when it exercises its authority to modify the common law.’ ” Dawe v Dr Reuven Bar-Levav & Assoc, PC, 485 Mich 20, 28; 780 NW2d 272 (2010), quoting Hoerstman Gen Contracting, Inc v Hahn, 474 Mich 66, 74; 711 NW2d 340 (2006).
Assuming that there was a common-law right in Michigan to forcibly resist a police officer’s unlawful acts, I believe the Legislature “in no uncertain terms” abrogated this right when it amended MCL 750.479 and enacted MCL 750.81d. As discussed, before 2002, MCL 750.479 made it unlawful to resist a police officer only if that officer was performing a “lawful act.” However, in *66 2002, the Legislature removed the “lawful acts” proviso in MCL 750.479 and enacted MCL 750.81d, which similarly does not contain the “lawful acts” proviso. By doing so, the Legislature “in no uncertain terms” excluded the lawfulness of the police officer’s conduct as an element of resisting an officer. That is, the Legislature clearly abrogated the right to resist unlawful police conduct. Therefore, in Michigan, as of 2002, it is unlawful to forcibly resist a police officer, regardless of the lawfulness of the police officer’s actions. As the Court of Appeals explained in Ventura, 262 Mich App at 375-377:
Examining the language of the [sic] MCL 750.81d, unlike in [the former version of] MCL 750.479, we find no reference to the lawfulness of the arrest or detaining act. The language of MCL 750.81d is abundantly clear and states only that an individual who resists a person the individual knows or has reason to know is performing his duties is guilty of a felony. MCL 750.81d. Because the language of the statute is clear and unambiguous, further construction is neither necessary nor permitted, and we decline to “ ‘expand what the Legislature clearly intended to cover’ ” and “read in” a lawfulness requirement.
When the Legislature enacts statutes, it has knowledge of existing laws on the same subject, and it is not within our province to disturb our Legislature’s obvious affirmative choice to modify the traditional common-law rule that a person may resist an unlawful arrest. [Citations omitted.]
The majority argues that the common-law right to resist unlawful police conduct was not abrogated because “nowhere in MCL 750.81d does the Legislature state that the right to resist unlawful conduct by an officer no longer exists.” Ante at 48. However, this Court has already held that the Legislature does not have to expressly state that it is “abrogating a common- *67 law right” in order for it to abrogate a common-law right. As this Court explained in Reed v Breton, 475 Mich 531, 539 n 8; 718 NW2d 770 (2006):
In Wold Architects & Engineers v Strat, 474 Mich 223, 234; 713 NW2d 750 (2006), we stated that nothing in the act at issue there showed an intent to abrogate the common law. We did not extend that analysis to conclude that the absence of language specifically abrogating the common law demonstrated that no abrogation occurred.
Here, the Legislature abrogated the common-law right to resist unlawful police conduct by removing this right from MCL 750.479 and by enacting the related statute, MCL 750.81d, without including this right. The Legislature’s intent to abrogate the common-law right to resist unlawful police conduct is sufficiently clear without its having to specifically state that this was its intent. A legislative body need not provide a blow-by-blow analysis concerning the effect of its actions on the common law when its actions will admit of only the most obvious interpretation.
Contrary to the majority’s position, the Legislature’s striking of the lawfulness requirement from the “resisting” portions of the pertinent statutes was hardly inadvertent. This is evidenced by the fact that the lawfulness requirement was partially retained in the obstruction portions of the statutes. Both statutes define “obstruct” as “the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command.” MCL 750.479(8)(a); MCL 750.81d(7)(a) (emphasis added). Accordingly, while an individual who physically interferes with or forcibly resists an officer may be guilty of “resisting” or “obstructing,” regardless of whether the officer’s conduct was lawful, an individual who fails to comply with an officer’s command may be guilty of “obstructing” only if *68 the officer’s command was “lawful.”[3] See Brooks v Rothe, 577 F3d 701, 707 (CA 6, 2009) (“[A] straightforward reading of the language of [MCL] 750.81d(7)(a) provides that the law can be violated in two ways: by physically resisting a command, whether lawful or unlawful, or by refusing to comply with a lawful command without using force.”) (emphasis in the original). By expressly providing that failing to comply with an officer’s command can constitute obstruction only if the officer’s command was “lawful” and yet expressly removing this same lawfulness requirement from the physical interference and resistance portions of the statutes, the Legislature “in no uncertain terms” exercised its authority to modify the common law. That is, it modified the common-law rule — that one could be found guilty of resisting or obstructing an officer only if the officer’s conduct was lawful — to allow one to be found guilty of resisting or obstructing an officer for failing to comply with an officer’s lawful command or *69 for physically interfering with or resisting the officer regardless of whether the officer’s conduct was lawful. The distinctions drawn are clear, reasonable, and fully within the judgment of the Legislature.
The majority further contends that the Legislature’s removal of the language “in their lawful acts” is irrelevant because “this Court has recently clarified that the Legislature’s failure to expressly provide for a common-law defense in a criminal statute does not prevent a defendant from relying on that defense.” Ante at 49, citing People v Dupree, 486 Mich 693; 788 NW2d 399 (2010). As discussed earlier, it appears that the right to resist unlawful police conduct was a statutory right rather than a common-law right in Michigan. However, even assuming that it was a common-law right in Michigan, it was a common-law right that the Legislature codified when it enacted 1869 PA 24, which amended a predecessor of MCL 750.479, and rejected when it amended MCL 750.479 and enacted MCL 750.81d in 2002. This historical context makes this case altogether distinguishable from Dupree in which this Court held that an individual charged with being a felon in possession of a firearm can raise the common-law affirmative defense of self-defense even though the felon-in-possession statute is silent regarding self-defense, because the Legislature had never expressly included self-defense in the statute and then removed it. Unlike in Dupree, in which the Legislature simply remained silent about self-defense in the felon-in-possession statute, the Legislature has not remained silent about the right to resist unlawful police conduct. Instead, from 1869 until 2002, the Legislature clearly provided for such a right, and in 2002, the Legislature equally clearly removed it. By doing so, the Legislature “in no uncertain terms” abrogated the right to resist *70 unlawful police conduct,[4] and Dupree is hardly relevant in establishing the contrary.
Next, the majority argues that the removal of “in their lawful acts” is irrelevant because it was replaced with “similar language,” namely, “performing his or her duties.” Ante at 55-56. The majority fails to recognize the substantial distinction between “in their lawful acts” and “performing his or her duties.” It is well established that the lawfulness of an individual’s conduct is not necessarily determinative of whether that *71 individual is “performing his or her duties” because an individual can commit an unlawful act while “performing his or her duties.” See People v Corr, 287 Mich App 499, 504; 788 NW2d 860 (2010), lv den 488 Mich 946; 794 NW2d 324 (2010) (“Under MCL 750.81d(l), it is illegal to assault, batter, resist, or obstruct an officer even if the officer is taking unlawful action, as long as the officer’s actions are done in the performance of the officer’s official duties.”). This has been recognized time and time again in the context of the doctrine of respondeat superior. Pursuant to that doctrine, “[a]n employer is generally liable for the torts its employees commit within the scope of their employment. ” Hamed v Wayne Co, 490 Mich 1, 10-11; 803 NW2d 237 (2011). Indeed, “ ‘[a] municipal corporation may... be liable for an unlawful and unauthorized act of one of its officers or agents if the act was done in the course of his official duty or employment, and within the general scope of his authority.’ ” Ross v Consumers Power Co (On Rehearing), 420 Mich 567, 624; 363 NW2d 641 (1983), quoting 57 Am Jur 2d, Municipal, School, and State Tort Liability, § 88, pp 99-100 (emphasis added).[5] The fact *72 that a municipality may be liable for an unlawful act of an officer if the act was done in the course of the officer’s official duty or employment necessarily means that an officer can commit an unlawful act while “performing his or her duties.” Therefore, contrary to the majority’s suggestion, “in their lawful acts” and “performing his or her duties” are not even remotely synonymous.[6]
However, this is not to say that an officer who is “on the clock” is necessarily performing his duties or acting within the scope of his employment. Instead, an officer is performing his duties or acting within the scope of his employment when he is “ ‘ “engaged in the service of his master, or while about his master’s business.” ’ ” Harried, 490 Mich at 11 (citations omitted). “Although an act may be contrary to an employer’s instructions”— or unlawful — it is within the employee’s scope of employment “if the employee accomplished the act in furtherance, or the interest, of the employer’s business.” Id. On the other hand, “[independent action, intended solely to further the employee’s individual interests, cannot be fairly characterized as falling within the scope of employment.” Id. Therefore, contrary to the majority’s assertion, the issue here is not whether the officers lawfully entered defendant’s house, but rather whether the officers were acting to further their employer’s or their own individual inter *73 ests. In other words, were they going “about [their] master’s business” or their own business when they entered defendant’s house? Id.[7]
There is no question that the officers in this case were going about their master’s business when they *74 entered defendant’s house. They knocked on defendant’s door because a vehicle belonging to Shane Adams, who had several outstanding warrants, was parked near defendant’s house and a person leaving defendant’s house told one of the officers that several minors were consuming alcohol inside defendant’s house and that Shane Adams “might be” inside. The officers saw empty bottles of alcohol and several people running and hiding inside the house. The officers were wearing their police uniforms, and they verbally identified themselves as police officers. Fifteen minutes after the officers knocked on the door, defendant’s girlfriend, Mandy McCarry, opened the door and admitted that minors were drinking alcohol inside. When an officer asked her if she knew who owned the vehicle parked on the street, she asked if the officers were looking for Shane Adams and then denied that he was there. Both officers smelled intoxicants, and one of the officers also smelled burnt or burning marijuana. When an officer told McCarry that they were going to enter the house to secure it while they obtained a search warrant, defendant came to the door and, using obscene and vulgar language, told the officers that they could not enter. When defendant moved to close the door, an officer placed his shoulder to the door to prevent it from being closed. A struggle ensued between defendant and the officers, and defendant was removed from the house and arrested. One of the officers suffered a torn hamstring and injured elbow as the result of the struggle, for which he sought medical treatment. The officers entered the house and patted down the occupants for weapons. After a search warrant was obtained, the officers found marijuana inside the house.
Although the trial court ruled that the officers’ entry into the house was unlawful because they did not yet have a warrant and there were no exigent circum *75 stances to justify the warrantless entry into the house,[8] this does not mean that the officers were not “performing their duties” when they entered the house. Indeed, the officers were unquestionably acting in furtherance of their employer’s interests and not in furtherance of their own personal interests. They were simply trying to do their job by locating a person who had multiple outstanding warrants while protecting minors who they had reason to believe might have been drinking alcohol and smoking marijuana. Given these circumstances, it cannot be reasonably disputed that the officers were performing their duties as law enforcement officers and, more importantly, that defendant knew or had reason to know that they were performing their duties.[9] Therefore, defendant had no right under law to resist or obstruct them.[10]
*76 II. CONSTITUTIONALITY
The next issue is whether MCL 750.81d, so interpreted, is unconstitutional, i.e., whether there is a constitutional right to resist unlawful police conduct. Defendant argues that there is such a right and specifically argues that it derives from the Fourth Amendment, which provides:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. [US Const, Am IV]
Defendant cites Payton v New York, 445 US 573, 590; 100 S Ct 1371; 63 L Ed 2d 639 (1980), for the proposition that “the Fourth Amendment has drawn a firm line at the entrance to the house [and] [a]bsent exigent circumstances, that threshold may not reasonably be crossed without a warrant.” Although this is certainly true, it says nothing about whether an individual has a right to physically resist a police officer. In other words, while the Fourth Amendment prohibits the police from entering an individual’s house without a warrant absent exigent circumstances, the Fourth Amendment *77 says nothing about entitling an individual to physically resist the police when they do enter that individual’s house. Defendant also cites Wright v Georgia, 373 US 284, 291-292; 83 S Ct 1240; 10 L Ed 2d 349 (1963), for the proposition that “one cannot be punished for failing to obey the command of an officer if that command is itself violative of the Constitution.” However, Wright says nothing about whether an individual has a right to go beyond simply failing to obey an officer’s unlawful command and actually physically resist the officer. As noted earlier, the Legislature recognized this distinction and expressly incorporated it into our resisting-and-obstructing statutes. MCL 750.479(8)(a); MCL 750.81d(7)(a). Only the “failure to comply” form of obstruction in these statutes is premised on the officer’s command being lawful; the “physical interference” alternative says nothing about the lawfulness of the command. Our resisting-and-obstructing statutes are completely consistent with Wright’s prohibition on punishing a person for failing to obey an officer’s unconstitutional command. Wright, 373 US at 291-292.[11] If the defendant in the instant case had simply refused to *78 allow the officers into his home, he could not have been charged with resisting and obstructing, but because he physically resisted the officers, he can be so charged.
In summary, defendant has not cited a single case that supports his proposition that a person has some constitutional right to physically resist a police officer who is engaging in unlawful conduct. Indeed, all the cases of which I am aware support the opposite proposition. See, for example, People v Curtis, 70 Cal 2d 347, 354; 74 Cal Rptr 713; 450 P2d 33 (1969) (“There is no constitutional impediment to the state’s policy of removing controversies over the legality of an arrest from the streets to the courtroom.”); Miller, Retail Rebellion and the Second Amendment, 86 Ind L J 939, 952-953 (2011) (“[N]o Supreme Court decision has ever held that the right to defend against an unlawful arrest is a constitutional as opposed to a mere common law right.”). That there is no constitutional right to resist unlawful police conduct is also obviously supported by the fact that the Model Penal Code,[12] the Uniform Arrest Act,[13] *79 and “a majority of states”[14] have abolished the right. Barnes v State, 946 NE2d 572, 576 (Ind, 2011).[15]
III. CONCLUSION
I respectfully dissent from the majority’s decision to reverse the judgment of the Court of Appeals and to overrule Ventura. Before 2002, the Legislature in MCL *80 750.479 made it unlawful to resist a police officer, but only if that officer was performing what was later determined to constitute a “lawful act.” However, in 2002, the Legislature amended MCL 750.479 and also enacted a new statute addressing this subject, MCL 750.81d, neither of which contains the “lawful act” requirement. By doing this, the Legislature clearly excluded consideration of the lawfulness of the police officer’s conduct as a relevant element in forcibly resisting an officer as long as the police officer was “performing his or her duties,” and it did so “in no uncertain terms.” Therefore, I would affirm the judgment of the Court of Appeals, which, in reliance on Ventura, held that defendant was properly charged with resisting and obstructing a police officer under MCL 750.81d after he physically struggled with officers who had entered his home.
YOUNG, C.J., concurred with MARKMAN, J.

 The trial court ruled that the officers had unlawfully entered defendant’s home, and the prosecutor did not appeal that ruling. Therefore, this opinion is written under the assumption that the officers’ entry was unlawful.

 I recognize, of course, that there was an English common-law right to resist unlawful arrests. Apparently, this right originated from the belief that an unlawful arrest “created adequate provocation for the victim, thus justifying the victim’s resistance and reducing the charge from murder (an unprovoked killing) to manslaughter (a killing upon sufficient provocation).” Hemmens & Levin, “Not a Law at All”: A Call for a *65 Return to the Common Law Right to Resist Unlawful Arrest, 29 Sw U L R1,9 (1999), citing Hopkin Huggett’s Case, 84 Eng Rep 1082 (KB, 1666). This right was later extended to excuse assaults against police officers. Hemmens & Levin, 29 Sw U L R at 11, citing Rex v Thompson, 168 Eng Rep 1193 (KB, 1825). However, the majority cites no authority for the proposition that this aspect of English common law was ever expressly adopted in Michigan.

 The majority holds that “the decision of the Court of Appeals in this case conflicts with the statutory language” because the Court “held that MCL 750.81d prohibits a person from resisting an officer’s unlawful conduct, yet the statute allows a person to obstruct an officer’s unlawful command.” Ante at 51 (emphasis in the original). The decision of the Court of Appeals does not, in my judgment, conflict in any way with the statutory language; rather, the majority simply fails to recognize the distinction between physically interfering with or resisting an officer and simply failing to comply with an officer’s command. Pursuant to MCL 750.81d, while an individual may be guilty of the former even if the officer’s conduct is unlawful, an individual can be guilty of the latter only if the officer’s command was lawful. For example, if a person responds to an officer’s unlawful command to hand over his car keys by punching the officer, this person may be guilty of obstructing the officer; however, if the person does nothing other than refuse to hand over his keys, he would not be guilty of obstructing the officer. This distinction makes perfect sense. It is perfectly logical to punish people who physically interfere with an officer, even if the officer’s conduct is unlawful, yet not punish those people who do nothing other than fail to comply with an officer’s unlawful command.

 Defendant argues that he should be able to claim “self-defense” because the Self-Defense Act, MCL 780.972(2), provides, in pertinent part:
An individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual. [Emphasis added.]
First, defendant may very well have been engaged in the commission of a crime when he used force to resist the officers’ entry into his house. Marijuana was found inside defendant’s house, and defendant’s girlfriend admitted that minors were drinking alcohol inside defendant’s house. Even more significantly, it is well established that “the more specific provision prevails over the more general. ...” Manuel v Gill, 481 Mich 637, 648-649; 753 NW2d 48 (2008). Clearly the resisting-and-obstructing statute more specifically pertains to the subject of resisting and obstructing a police officer than does the Self-Defense Act, and pursuant to the resisting-and-obstructing statute, an individual can only forcibly resist a police officer if he does not know or have reason to know that the officer is performing his duties. MCL 750.81d; see also State v Hobson, 218 Wis 2d 350, 365; 577 NW2d 825 (1998), in which a similar argument was rejected. Moreover, there is no evidence that defendant “ ‘reasonably believe[d]... that he [was] in immediate danger of unlawful bodily harm from his adversary....’” Dupree, 486 Mich at 707, quoting 2 LaFave, Substantive Criminal Law (2d ed), § 10.4, p 142. At most, defendant could reasonably have believed that he was in immediate danger of an unlawful entry into his home by a police officer, which does not give rise to a right to forcefully resist.

 See also Anschutz v Liquor Control Comm, 343 Mich 630, 637; 73 NW2d 533 (1955) (“[T]he instruction to the employee did not relieve defendant from responsibility for the illegal act on the ground that such employee placed himself outside the scope of his employment when he violated it.”); Barnes v Mitchell, 341 Mich 7, 19-20; 67 NW2d 208 (1954) (“ ‘The application of the rule respondeat superior does not depend upon the obedience of the servant to his master’s orders, nor upon the legality of the servant’s conduct; where a servant is acting within the scope of his employment, and in so acting does something negligent or wrongful, the employer is liable, even though the acts done may be the very reverse of that which the servant was actually directed to do.’ ”) (citation omitted); Randall v Chicago & Grand Trunk R Co, 113 Mich 115, 119; 71 NW 450 (1897) (“ ‘[T]he fact that the injury was occasioned by the negligent or unlawful acts of the appellant’s employés would not make the appellant liable, unless it further appeared that the acts complained of occurred within the scope of the servants’ employment.’ ”) (citation omitted).

 Even the English common-law right to resist unlawful arrests did not apply to all unlawful arrests. Instead, “the cases in which the common law courts held that an illegal arrest created sufficient provocation to excuse resistance, generally involved police officers arresting individuals through truly outrageous conduct and ‘arbitrary assertions of authority.’ ” Hemmens & Levin, 29 Sw U L R at 12, quoting Chevigny, The Right to Resist an Unlawful Arrest, 78 Yale L J 1128, 1131 (1969). In particular, individuals did not have a right to resist “good faith” arrests, i.e., arrests made by police officers who had a good-faith belief that the arrest was lawful. Hemmens & Levin, 29 Sw U L R at 12.

 This interpretation is consistent with how other jurisdictions have interpreted similar statutes. For example, in United States v Heliczer, 373 F2d 241, 245 (CA 2, 1967), cert den, 388 US 917; 87 S Ct 2133; 18 L Ed 2d 1359 (1967), the United States Court of Appeals for the Second Circuit rejected the defendant’s “claim that if the arrest was unlawful, the agents were not engaged in performing their official duties, and [the defendant] had a right to resist.” Heliczer explained:
“Engaged in * * * performance of official duties” is simply acting within the scope of what the agent is employed to do. The test is whether the agent is acting within that compass or is engaging in a personal frolic of his own. It cannot be said that an agent who has made an arrest loses his official capacity if the arrest is subsequently adjudged to be unlawful. [Id., quoting 18 USC 111.]
See also United States v Street, 66 F3d 969, 978 (CA 8, 1995) (“The ‘scope of what the agent is employed to do’ is not defined by ‘whether the officer is abiding by laws and regulations in effect at the time of the incident____’”) (citation omitted); United States v Jennings, 991 F2d 725, 732 (CA 11, 1993) (“The test is not whether the officer is abiding by laws and regulations in effect at the time of the incident, but whether the officer is on some ‘frolic of his own.’ ”) (citations omitted); Barnes v State, 946 NE2d 572, 578 (Ind, 2011) (holding that an officer “was engaged in the execution of his official duty” regardless of whether his entry into the defendant’s apartment was lawful); State v Valentine, 132 Wash 2d 1; 935 P2d 1294 (1997) (holding that an officer “was engaged in performance of his official duties” regardless of whether his arrest of the defendant was lawful); Commonwealth v Moreira, 388 Mass 596, 601; 447 NE2d 1224 (1983) (“[A] person may not use force to resist an arrest by one who he knows or has good reason to believe is an authorized police officer, engaged in the performance of his duties, regardless of whether the arrest was unlawful in the circumstances.”); State v Austin, 381 A2d 652, 654 (Me, 1978) (noting that a statute that “makes a person guilty of assaulting an officer if he ‘knowingly assaults a law enforcement officer while the officer is engaged in the performance of his official duties’... ‘discourage[s] people in custody from a violent response to what they see as an illegal arrest’ ”) (emphasis and citations omitted). The majority on the other hand, does not cite a single case in support of its contrary position.

 Again, because the prosecutor did not appeal that ruling, this opinion is premised on the assumption that there were no “exigent circumstances” to justify the warrantless entry into the house, and thus that the entry was unlawful. Nevertheless, it is worth noting that the “exigent circumstances” exception to the warrant requirement does allow the police to enter a home without a warrant to prevent the “imminent destruction of evidence,” In re Forfeiture of $176,598, 443 Mich 261, 267-268; 505 NW2d 201 (1993), and when asked why the officers “wanted to ‘secure’ the residence,” one officer testified, “[W]e wanted to prevent any destruction of evidence and so we were going to secure it so noone [sic] could flush marijuana or further eat it, or do whatever they could to destroy it,” and the other officer testified that their entry “was based on probable cause that there was evidence that could be destroyed inside the residence.” Accordingly, even assuming that the officers’ entry was unlawful — and I undertake no effort to resolve that question in this case— the officers did not believe at the time that it was unlawful, and they certainly believed that they were performing their duties.

 Indeed, defendant himself has never argued that the officers were not performing their duties in the instant case.

 The majority refers to a hypothetical situation posed by Justice CAVANAGH at oral argument in which a male officer, while performing a search, sexually assaults a female prisoner. The majority contends that this scenario demonstrates why the language “performing his or her *76 duties” and “in their lawful acts” must be interpreted as synonymous. Otherwise, the majority contends, this female prisoner would not be allowed to resist the officer without risking a resisting-and-obstructing charge. I respectfully disagree. The officer in Justice Cavanagh’s hypothetical situation simply cannot be said to have been performing his duties, not simply because his actions were unlawful, but because they were “independent action[s] accomplished solely in furtherance of [his] own criminal interests,” i.e., outside the scope of his employment. Homed, 490 Mich at 11. And because the female prisoner would have obvious reason to know that the officer was not performing his duties by sexually assaulting her, she could certainly resist the officer without risking being charged with resisting and obstructing.

 This was also recognized in Bourgeois v Strawn, 452 F Supp 2d 696, 710 (ED Mich, 2006), which explained:
That argument, that police can manufacture grounds to arrest a person innocent of wrongdoing simple [sic] by telling him to leave his own home without any lawful authority to do so and then arresting him for violating that directive, is a disturbing proposition. The Court does not read the Michigan intermediate appellate court’s decision in Ventura as sanctioning that argument, and the proposition is of questionable constitutional validity.
That is, Bourgeois recognized that Ventura, 262 Mich App at 377, which held that “a person may not use force to resist an arrest made by one he knows or has reason to know is performing his duties regardless of whether the arrest is illegal under the circumstances of the occasion,” did not hold that a person may not refuse to comply with an unlawful command, and, thus, neither our resisting-and-obstructing statutes nor Ventura’s interpretation of them runs afoul of any constitutional protection.

 “[T]he Model Penal Code, adopted by the American Law Institute in 1958, denies the right ‘to resist an arrest which the actor knows is being made by a peace officer, although the arrest is unlawful.’ ” Heliczer, 373 F2d at 246 n 3 (citations omitted). “The Model Penal Code eliminated the right on two grounds: ‘(1) the development of alternate remedies for an aggrieved arrestee, and (2) the use of force by the arrestee was likely to result in greater injury to the person without preventing the arrest.’ ” Barnes v State, 946 NE2d 572, 575 (Ind, 2011), quoting Hemmens & Levin, 29 Sw U L R at 23.

 The Uniform Arrest Act was a model act “drafted by a committee comprised of police officers, prosecutors, defense attorneys, judges, attorneys general, and law professors.” Hemmens & Levin, 29 Sw U L R at 18. It provided that “ ‘[i]f a person has reasonable ground to believe that he is being arrested by a peace officer, it is his duly to refrain from using force or any weapon in resisting arrest regardless of whether or not there is a legal basis for the arrest’ ” and “it prevented an arrestee from using the illegality of the arrest as a defense to charges of assault, manslaughter, or murder.” Id. at 18-19, quoting Warner, The Uniform Arrest Act, 28 Va L R 315, 345 (1942).

 As of 1999, 39 states had eliminated the common-law right, “twenty-three by statute and sixteen by judicial decision.” Hemmens & Levin, 29 Sw U L R at 24. See also 2 LaFave, Substantive Criminal Law (2d ed), p 159 (noting that many modern state codes include a provision “outlawing the use of force against a known police officer, though the arrest is unlawful,” and that “even in the absence of such an enactment some courts have abandoned the common law view”).

 See 4 Torcía, Wharton’s Criminal Law (15th ed), p 280:
In some states, the traditional common-law rule has been changed. A person may not resist an arrest, lawful or unlawful, which he knows or believes is being made by a peace officer. The obvious purpose of this change is to avoid a dangerous confrontation and require the issue of an arrest’s lawfulness to he resolved not in the street but in a court. See also Perkins, Criminal Law (3d ed), p 554:
[T]he problems involved are so complicated that it is easy for either the officer or the arrestee to be mistaken in regard to the lawfulness of the arrest and it seems wise to require such issues to be decided in court rather than by force and the present trend . .. is to provide that there is no privilege to resist an arrest which the arrestee knows is being made by a peace officer, even if the arrest is unlawful.
See, for example, Commonwealth v Gomes, 59 Mass App Ct 332, 342; 795 NE2d 1217 (2003):
[T]he lawfulness of police entry into a residence often presents close and peculiarly fact-dependent questions as to which lawyers and even judges may disagree. Such questions, which are only resolved later with the benefit of dispassionate reflection, are particularly ill-suited to the split-second judgments required of police in their interactions with the citizenry. “Such a close question is more properly decided by a detached magistrate rather than by the participants in what may well be a highly volatile imbroglio.” [Citations omitted.]