Danielle GARRETT, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–1101–CR–1.

Court of Appeals of Indiana.

Oct. 26, 2011.

Suzy St. John, Marion County Public Defender, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Karl M. Scharnberg, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Following a bench trial, Danielle Garrett was convicted of Battery on a Law Enforcement Officer [1] and Resisting Law Enforcement,[2] both class A misdemeanors. On appeal, Garrett presents one issue for our review: Is the evidence sufficient to support her conviction for resisting law enforcement?

We affirm.

On August 14, 2010, Officer Jason Rauch of the Indianapolis Metropolitan Police Department was dispatched to 3309 North Riley Avenue in Indianapolis on a report of a domestic disturbance. When Officer Rauch arrived, a sixteen-year-old girl approached him and began to explain what was going on. While speaking with the sixteen-year-old, Officer Rauch observed Garrett at a nearby intersection. Garrett appeared to be very angry and was walking quickly toward the house from where the disturbance call came, muttering something under her breath. The sixteen-year-

---

1. Ind.Code Ann. § 35–42–2–1(a)(1)(B) (West, Westlaw current through 2011 1st Regular Sess.).

2. Ind.Code Ann. § 35–44–3–3(a)(1) (West, Westlaw current through 2011 1st Regular Sess.).

old girl identified Garrett as one of the parties who was involved in the disturbance.

Officer Rauch, who was in full uniform and had arrived at the scene in his marked police car, told Garrett to stay outside. Garrett responded, saying, "fuck that, I'm beating that motherfucker's ass." *Transcript* at 9. Garrett ignored Officer Rauch's command and walked inside the house through a side door. Believing Garrett was going to fight someone, Officer Rauch followed Garrett to the house. Officer Rauch initially stayed outside, from which position he could see Garrett standing in the kitchen. Officer Rauch tried to convince Garrett to come outside and talk to him about what was going on. Garrett was yelling and screaming and refused to exit the house. Several of Garrett's family members stood between Garrett and the rest of the house. Garrett tried to bypass the family members and continued to yell and scream.

Officer Rauch explained that he grabbed Garrett by the wrist and told her to get outside.[3] Garrett pulled her arm from Officer Rauch's grasp and walked farther into the house. Believing that the situation was "spiraling out of control" and that violence was imminent, Officer Rauch radioed for back-up officers to expedite their response. *Id.* at 14. Officer Rauch then ordered everyone out of the house. The group of people in the kitchen, other than Garrett, exited the house. Officer Rauch then entered the house and attempted to calm Garrett, who was still yelling and being disrespectful. When additional officers arrived, Garrett yelled, "go get that motherfucker, he's in the bathroom. Why are you talking to me? Go get him. Go

get him." *Id.* at 15–16. The additional officers went to the bathroom and did not find anyone there or anywhere else in the house.

Meanwhile, Officer Rauch continued to try to calm Garrett, who remained uncooperative and "very boisterous and belligerent." *Id.* at 16. Officer Rauch told Garrett he was going to place her in handcuffs and ordered her to turn around. Garrett took a step back and took on a stance indicating that she intended to fight Officer Rauch. Officer Rauch put his forearm on Garrett's chest and pushed her against a door in an effort to gain control over her. Garrett pushed Officer Rauch away and was able to get out of his control. Garrett backed away and again assumed an aggressive position that made Officer Rauch believe she intended to fight him. Officer Rauch then attempted to wrestle Garrett to the ground, and in so doing, Garrett fell into a table and onto a couch. The sound from the encounter drew the other officers to that part of the house.

Because Garret was "flailing around and . . . being very irate, yelling, cussing," one of the other officers grabbed Garrett's arms and he tried to wrestle her to the couch. *Id.* at 34. Officer Rauch tried to wrestle Garrett onto a different couch in the living room, causing Garrett and the assisting officer to fall. As the officers attempted to handcuff Garrett, Garrett kneed Officer Rauch in the upper right thigh. The officers were eventually able to roll Garrett onto her stomach and place her in restraints.

On August 14, 2010, the State charged Garrett with battery on a law enforcement officer, a class A misdemeanor, resisting law enforcement, as a class A misdemean-

---

**3.** It is unclear from the record where Officer Rauch was located when he grabbed Garrett by the wrist, but it would seem, given Officer Rauch's testimony that he entered the house moments later, that he was in a position outside the house where he could reach in and grab Garrett by the wrist.

or, and disorderly conduct, a class B misdemeanor. A bench trial was held on December 6, 2010, at the conclusion of which the court found Garrett guilty of battery on an officer and resisting law enforcement. Garrett now appeals.

Garrett argues that the evidence is insufficient to sustain her conviction for resisting law enforcement. Specifically, Garrett argues, contrary to our Supreme Court's recent holding in *Barnes v. State,* 946 N.E.2d 572 (Ind.2011), *clarified on reh'g,* 953 N.E.2d 473,[4] that she had a right to reasonably resist what she asserts was the unlawful entry of the police into her home. Our standard of review for challenges to the sufficiency of the evidence is well settled.

> When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Henley v. State,* 881 N.E.2d 639, 652 (Ind.2008). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

*Bailey v. State,* 907 N.E.2d 1003, 1005 (Ind.2009).

To prove that Garrett committed class A misdemeanor resisting law enforcement, the State was required to prove beyond a reasonable doubt that Garrett knowingly or intentionally forcibly resisted, obstructed, or interfered with a law enforcement officer while the officer was lawfully engaged in the execution of his duties. I.C.

§ 35–44–3–3(a)(1). Garrett claims that the evidence cannot support her conviction because she had a right to reasonably resist Officer Rauch's efforts to place her in handcuffs because Officer Rauch and the other responding officers entered her home without a warrant and without any other justifiable reason to enter her home. Garrett takes issue with our Supreme Court's recent decision in *Barnes v. State,* wherein the Court held "there is no right to reasonably resist unlawful entry by police officers." 946 N.E.2d at 574. Garrett also argues that the *Barnes* holding should not be applied retroactively to her case.

Here, Officer Rauch was responding to a report of a domestic disturbance. Upon arrival at the scene, Officer Rauch observed Garrett, who had been identified as one of the parties involved in the domestic dispute, and noted that she was visibly angry and was walking quickly toward the house from where the disturbance call originated, muttering under her breath. Officer Rauch ordered Garrett not to go inside the house and she responded, saying, "fuck that, I'm beating that motherfucker's ass." *Transcript* at 9. Garrett then proceeded to enter the home and Officer Rauch followed, stopping outside the door Garrett had entered.

Initially, Officer Rauch remained outside as he tried to determine what was happening and to diffuse the situation. Officer Rauch could see Garrett inside the home, and at one point, tried to grab her by the wrist to get her to come outside and talk to him. Garrett pulled away from Officer Rauch's grasp and retreated farther into the house. Others inside the home were standing between Garrett and the rest of

---

4. At the time Garrett filed her Appellant's Brief, a petition for rehearing on the *Barnes* opinion was pending before our Supreme Court, and thus, the decision was not yet final. On September 20, 2011, our Supreme Court issued an opinion on rehearing, clarifying its decision in *Barnes* but restating its essential holding. We decline Garrett's request to reconsider our Supreme Court's holding in *Barnes.*

the house. This confirmed Officer Rauch's belief that Garrett wanted to fight someone else in the house. Garrett kept refusing to comply with Officer Rauch's orders to come outside and the entire time Garrett remained loud and belligerent. It was at this point that Officer Rauch entered the house as part of his continued effort to determine what was going on and to diffuse the situation.

When Officer Rauch entered the home and confronted Garrett in the living room, which was about the same time that the back-up officers arrived, Garrett was yelling for the officers to "go get that motherfucker, he's in the bathroom. Why are you talking to me? Go get him. Go get him." *Id.* at 15–16. At this point, even though she had not previously invited the officers into the home, she clearly acquiesced in the presence of the officers in her home and, indeed, invited the officers into her home when she directed them to detain an individual she believed was in the bathroom.

Garrett's conviction for resisting law enforcement was based on events that transpired after she expressly directed the officers to look and detain someone she believed to be in the bathroom. As the two back-up officers were checking out the bathroom, Officer Rauch told Garrett that he was going to place her in handcuffs because she was still very agitated and yelling and screaming. Garrett resisted Officer Garrett's attempt to detain her and a struggle ensued, which ultimately involved a second officer. Garrett's claim that her resistance at this point was reasonable in response to an unlawful entry by the officers is untenable as the entry of the officers and Garrett's resistance are completely divorced from one another. Garrett's resistance occurred after she had acquiesced to their presence in her home. Garrett's argu-

ment that the officers were unlawfully in her home is without merit.

Moreover, we note that in its opinion on rehearing, our Supreme Court reiterated the notion submitted by the Attorney General in response to Barnes's petition for rehearing that "reasonable resistance does not include battery or other violent acts against law enforcement." *Barnes v. State*, 953 N.E.2d at 474. Here, the trial court concluded from the evidence that the officers "were attempting to diffuse the situation and it was simply made worse by Miss Garrett." *Transcript* at 50–51. We agree with the trial court's assessment. Instead of cooperating with Officer Rauch, Garrett forcefully pushed him away and then struggled with him, during which she kneed him in the upper thigh. It took a second officer joining in the scuffle to get Garrett in handcuffs. Thus, even if this were a situation involving unlawful police entry, Garrett's resistance was not reasonable.

Given that Garrett has failed to establish an unlawful entry and our conclusion that her resistance was not reasonable, the rule announced in *Barnes* is not applicable to the present case. Notwithstanding, the *Barnes* decision does not present an ex post facto problem in this case. It has long been established that battery against a police officer is not reasonable resistance under the common law. *See Barnes v. State*, 946 N.E.2d 572; *Robinson v. State*, 814 N.E.2d 704 (Ind.Ct.App.2004). Thus, even prior to *Barnes*, Garrett's conduct in forcefully combating the officer(s) after she acquiesced in their presence in her home was unlawful. The evidence presented was sufficient to prove that Garrett knowingly or intentionally forcibly resisted, obstructed, or interfered with a law enforcement officer while the officer was

lawfully engaged in the execution of his duties.

Judgment affirmed.

DARDEN, J., and VAIDIK, J., concur.