**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**PATRICIA CARESS MCMATH**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| TERRY BERRY, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 49A02-1304-CR-348 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Becky Pierson-Treacy, Judge
The Honorable Shatrese M. Flowers, Commissioner
Cause No. 49F19-1209-CM-66944

**December 26, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Terry Berry ("Berry") appeals his convictions for Disorderly Conduct, as a Class B misdemeanor,[1] and Carrying a Handgun without a License, as a Class A misdemeanor.[2]

We affirm.

## Issues

Berry presents three issues for our review, which we restate as whether:
  I.  The trial court abused its discretion when it did not issue a jury instruction that Berry tendered concerning Disorderly Conduct;

  II.  Berry's conviction for Disorderly Conduct is a violation of his right to political speech under the Indiana Constitution; and

  III.  There was insufficient evidence to sustain his conviction for Carrying a Handgun without a License.

## Facts and Procedural History

On September 25, 2012, Berry was driving on 38th Street in Indianapolis; there were three passengers with him. In traffic behind Berry, separated by several cars, was Marion County Sheriff's Office ("MCSO") Deputy James Russo ("Deputy Russo"). While driving along 38th Street, Deputy Russo heard tires squeal and saw Berry's car weaving across lanes, cutting off other drivers. Berry's erratic driving continued for more than a mile, causing other drivers to brake suddenly.

Eventually, Deputy Russo was able to move through traffic and initiate a traffic stop of Berry's vehicle. Berry pulled his car into the lot of an automotive repair shop in the 1800 block of East 38th Street, and Deputy Russo pulled up behind Berry's car.

---

[1] Ind. Code § 35-45-1-3(a).

[2] I.C. § 35-47-2-1(a).

2

Because of the number of occupants of Berry's vehicle, Deputy Russo called for additional assistance. MCSO Captain Donald VanCleave ("Captain VanCleave") arrived to help Deputy Russo conduct the traffic stop.

Deputy Russo approached Berry's vehicle on the driver's side and began to talk with Berry, who was agitated and belligerent after being pulled over. In response to Deputy Russo's request for Berry's driver's license and registration, Berry fumbled with paperwork in his lap with his right hand. While doing this, Berry put his left hand down between the driver's door and his seat, out of Deputy Russo's sight. Deputy Russo twice asked Berry to move his left hand back into view; Berry complied with these requests, putting his left hand back into his lap.

Berry eventually attempted to have Deputy Russo take paperwork from him by opening the door to the car; while doing so, Berry reached across to open the door with his right hand, keeping his left hand between the door and the seat. Deputy Russo closed the door and, having become concerned for their safety due to Berry's repeated movement of his left hand, Deputy Russo and Captain VanCleave each drew their weapons. Additional backup was called, and Deputy Russo and Captain VanCleave began to remove Berry and the passengers from the car.

Deputy Russo removed Berry and the driver's side backseat passenger from the vehicle. As Captain VanCleave was preparing to remove the passenger's side backseat occupant from the car, he saw the barrel of a chrome, semi-automatic handgun protruding into the rear passenger's compartment from underneath the seat Berry had just previously

3

occupied. After a search of state records did not return any information that Berry had a license to carry a firearm, Berry was placed under arrest.

During the traffic stop and subsequent detention of Berry and his passengers, additional police officers arrived, several with lights and sirens on. Throughout his interaction with police, Berry was agitated, and became more so as the traffic stop continued on. Berry yelled and cursed at police, becoming louder as time went on to the point that he was audible over the sound of police sirens, causing occupants of the repair shop where the stop occurred to come out and see what was happening at the scene; the more people came out of the shop, the louder Berry became. Captain VanCleave and Deputy Russo eventually abandoned their attempts to explain why they had stopped Berry and why he had been arrested, and Captain VanCleave ordered Berry transported away from the scene.

On September 26, 2012, Berry was charged with Carrying a Handgun without a License, as a Class A misdemeanor, and Disorderly Conduct, as a Class B misdemeanor. A jury trial was conducted on March 21, 2013, at the conclusion of which Berry was found guilty of both counts, as charged. After the trial's conclusion, the court entered judgments of conviction against Berry and sentenced him to 365 days of imprisonment for Carrying a Handgun without a License, with sixty days suspended to probation, and 154 days of imprisonment for Disorderly Conduct, with twenty-six days suspended to probation; the sentences were run concurrently to one another, and consecutively to sentences in unrelated matters.

This appeal followed.

4

**Discussion and Decision**

Jury Instruction

On appeal, Berry first contends that the trial court abused its discretion when it did not issue to the jury his proffered instruction on Disorderly Conduct.

We afford trial courts broad discretion in the manner of instructing a jury, and we review such decisions only for an abuse of that discretion. Snell v. State, 866 N.E.2d 392, 395 (Ind. Ct. App. 2007). When reviewing jury instructions on appeal, we look to (1) whether the tendered instructions correctly state the law, (2) whether there is evidence in the record to support giving the instruction, and (3) whether the substance of the proffered instruction is covered by other instructions. Treadway v. State, 924 N.E.2d 621, 636 (Ind. 2010). We will reverse a conviction only where the appellant demonstrates that an error in the jury instructions prejudiced his substantial rights. Id. "'[W]here a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise,'" we will not reverse the conviction. Johnson v. State, 959 N.E.2d 334, 338 (Ind. Ct. App. 2011) (quoting Williams v. State, 891 N.E.2d 621, 630 (Ind. Ct. App. 2008)), trans. denied.

Berry's assignment of error centers upon the trial court's decision not to issue to the jury a tendered instruction that cited language from two appellate cases, one from the Indiana Supreme Court, Price v. State, 622 N.E.2d 954 (Ind. 1993), and one from this Court, Borchert v. State, 621 N.E.2d 657 (Ind. Ct. App. 1993), trans. denied. There is no blanket prohibition on the use in jury instructions of language from appellate decisions. Gravens v. State, 836 N.E.2d 490, 494 (Ind. Ct. App. 2005), trans. denied. But the mere fact that an appellate case

uses specific language does not render that language suitable for proper instruction of a jury. Ludy v. State, 784 N.E.2d 459, 461 (Ind. 2003). And "[i]nstructions that emphasize one particular evidentiary fact, witness, or phase of the case have long been disapproved." Id.

Here, Berry was charged with Disorderly Conduct. Indiana Code section 35-45-1-3 provides that "[a] person who recklessly, knowingly, or intentionally … makes unreasonable noise and continues to do so after being asked to stop … commits disorderly conduct, a Class B misdemeanor." I.C. § 35-45-1-3(a). The jury was instructed on the statutory elements of the offense of Disorderly Conduct and the requisite levels of culpability.

Berry did not object to any of these instructions, but also tendered the following proposed final instruction:

> Indiana's disorderly conduct statute is aimed at intrusiveness and loudness of expression, not whether content of language is obscene or provocative.
>
> Standing by itself, evidence of loudness does not constitute unreasonable noise. Loudness may be unreasonable, but that determination must be made in the context of the surrounding circumstances.

(App'x at 76.) The trial court declined to so instruct the jury, and Berry contends that the trial court's rejection of this tendered instruction was an abuse of discretion.

The State concedes that the language of Berry's tendered instruction was a correct statement of the law. The State qualifies its concession, however, based upon the specific fact patterns of Price and Borchert and argues that the tendered instruction would have drawn excessive attention to one facet of the evidence—the question of how loud Berry was without reference to the broader effect of Berry's conduct.

We agree. There was not specific evidence as to the volume of Berry's voice or the

6

overall level of ambient noise in the environment at the time. Thus, the question of Berry's loudness per se was not so sufficiently evidenced as to require a jury instruction.

Yet, even if that were not the case, any error in declining to issue Berry's proffered instruction was harmless because our review of the evidence leads us to a conclusion that the jury could not reasonably have reached a conclusion other than that Berry was making unreasonable noise. Deputy Russo testified that Berry's interactions with him began with belligerence that only increased as the encounter with police went on. Eventually, Berry was yelling at police with sufficient volume that, over the sound of police sirens, people continued to come outside from a repair shop to see what was happening. Both Deputy Russo and Captain VanCleave testified that as more people came from inside the shop, Berry responded by becoming louder still. Captain VanCleave testified that Berry's yelling became so difficult to deal with that a wagon was called to take Berry away and police entirely ceased trying to communicate with Berry about the reason for his arrest.

Accordingly, we decline to reverse Berry's conviction on the basis of his challenge to the trial court's rejection of his tendered jury instruction.

### Political Speech under the Indiana Constitution

We turn now to Berry's second issue, whether his conviction is infirm because the application of the Disorderly Conduct statute in his case does not pass scrutiny under the Indiana Constitution.

The Indiana Constitution provides that "[n]o law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on

7

any subject whatever: but for the abuse of that right, every person shall be responsible." Ind. Const. art. 1, § 9. Our supreme court in Price held that this constitutional provision imposes limits upon the application of the Disorderly Conduct statute. 622 N.E.2d at 960-65. Thus, a conviction for Disorderly Conduct must withstand constitutional scrutiny. Barnes v. State, 946 N.E.2d 572, 578 (Ind. 2011), adhered to on reh'g on other grounds, 953 N.E.2d 473.

> We employ a two-step inquiry in reviewing the constitutionality of an application of the disorderly conduct statute: we (1) "determine whether state action has restricted a claimant's expressive activity" and (2) "decide whether the restricted activity constituted an 'abuse' of the right to speak." Whittington v. State, 669 N.E.2d 1363, 1367 (Ind. 1996). The first prong may be satisfied based solely on the police restricting a claimant's loud speaking during a police investigation. Id. at 1370. The second prong hinges on whether the restricted expression constituted political speech. Id. at 1369–70. If the claimant demonstrates under an objective standard that the impaired expression was political speech, the impairment is unconstitutional unless the State demonstrates that the "magnitude of the impairment" is slight or that the speech amounted to a public nuisance such that it "inflict[ed] 'particularized harm' analogous to tortious injury on readily identifiable private interests." Id. (quoting Price[, 622 N.E.2d at 964]). If the expression, viewed in context, is ambiguous, it is not political speech, and we evaluate the constitutionality of the impairment under standard rationality review. Id. at 1370.

Id. at 577.

In Barnes, the defendant argued on appeal that yelling and making threats to investigating police officers amounted to protected political speech, and in advancing that position relied upon Price. Id. at 578. Comparing Price to another case where a juvenile's "alleged political speech … hampered the officer's ability to perform his law enforcement duties," the Barnes Court concluded that Barnes's conduct was not protected under the Indiana Constitution, and affirmed his conviction. Id. (citing J.D. v. State, 859 N.E.2d 341 (Ind. 2007)).

8

We think the instant case is analogous to Barnes, J.D., and other such cases. The evidence introduced at trial indicates that Berry was cursing at police officers, but there is no specific evidence as to any political content of Berry's speech. Berry was hostile and cursing from the beginning of his interactions with Deputy Russo and continued to do so, at continually louder volume, throughout his encounter with police until Captain VanCleave eventually simply instructed the officers present at the scene to discontinue any attempt to communicate with Berry. Berry was asked multiple times to stop.

Thus, in context, we cannot conclude that Berry's speech was unambiguously political. See Barnes, 946 N.E.2d at 577. And given the amount of time Berry spent yelling, his ability to obtain a significant audience for what he said, and the level of interference his speech imposed upon the execution of law enforcement duties, we cannot conclude that his arrest amounts to anything more than a de minimis impairment. We therefore cannot conclude that Berry's conviction violated the Indiana Constitution's protections for political speech.

### Carrying a Handgun without a License

We now address the last of Berry's contentions, that there was insufficient evidence to support his conviction for Carrying a Handgun without a License.

Our standard of review in such matters is well settled. We consider only the probative evidence and reasonable inferences supporting the verdict. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh evidence. Id. We will affirm the conviction unless "'no reasonable fact-finder could find the elements of the

9

crime proven beyond a reasonable doubt.'" Id. (quoting Jenkins v. State, 726 N.E.2d 268, 270 (Ind. 2000)). "'The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.'" Id. (quoting Pickens v. State, 751 N.E.2d 331, 334 (Ind. Ct. App. 2001)).

Here, Berry was charged with Carrying a Handgun without a License, as a Class A misdemeanor. To convict Berry of the offense, as charged, the State was required to prove beyond a reasonable doubt that Berry knowingly or intentionally carried a loaded handgun, not secured in a case, in a vehicle or on or about his person without being licensed as required by law. I.C. §§ 35-47-2-1(a) & (b)(4); App'x at 23. On appeal, Berry contends only that the State lacked sufficient evidence of his constructive possession of the firearm to sustain the conviction.

To obtain a conviction here under a theory of constructive possession, the State was required to prove that "the handgun was found in a vehicle and that the defendant had control of either the weapon or of the vehicle with knowledge of the weapon's presence." E.D. v State, 905 N.E.2d 505, 507 (Ind. Ct. App. 2009) (quotation and emphasis omitted). Constructive possession occurs when an individual has the intent and capability to maintain dominion and control over the contraband. Id. Where control is non-exclusive, that intent may be inferred from additional circumstances that indicate the defendant's knowledge of the contraband's presence. Id. These circumstances include:

> 1) incriminating statements made by the defendant; 2) attempted flight or furtive gestures; 3) location of substances like drugs in settings that suggest manufacturing; 4) proximity of the contraband to the defendant; 5) the location

of the contraband within the defendant's plain view, and; 6) the mingling of the contraband with other items owned by the defendant.

Id.

Here, Berry was sitting in the driver's seat of the vehicle, and the firearm was discovered protruding out from underneath Berry's seat, with the barrel visible and the handle of the pistol still underneath the seat. Deputy Russo testified that when he approached the vehicle, only one occupant—Berry—moved, while the rest of the occupants sat still. On several instances during their encounter, Berry moved his left hand between the door and his seat, out of Deputy Russo's view, and the area toward which Berry moved his left hand sloped from the door to the floor of the vehicle. Berry never used his left arm to produce any of the documentation requested by Deputy Russo, and when Berry opened the door to the vehicle he used his right hand, while his left hand remained between the door and his seat. We conclude that, taken together, this amounts to sufficient evidence of Berry's constructive possession of the firearm to sustain his conviction for Carrying a Handgun without a License.

**Conclusion**

We find no reversible error in the trial court's decision not to issue Berry's tendered instruction to the jury. Berry's conviction for Disorderly Conduct is not infirm under the Indiana Constitution, and there was sufficient evidence to sustain his conviction for Carrying a Handgun without a License.

Affirmed.

FRIEDLANDER, J., and KIRSCH, J., concur.

11