

FILED

Oct 21 2020, 9:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Victoria Bailey Casanova
Casanova Legal Services, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Assistant Section Chief for
Criminal Appeals
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lorraine McCoy, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | October 21, 2020 <br><br> Court of Appeals Case No. 20A-CR-723 <br><br> Appeal from the Noble Superior Court <br><br> The Honorable Steven C. Hagen, Judge <br><br> Trial Court Cause No. 57D02-1908-CM-584 |

**Sharpnack, Senior Judge.**

## Statement of the Case

Lorraine McCoy appeals her conviction of disorderly conduct, a Class B misdemeanor.[1] We reverse her conviction.

## Issue

McCoy presents two issues, which we consolidate as one: whether the evidence is sufficient to sustain her conviction of disorderly conduct.

## Facts and Procedural History

On August 10, 2019, Sergeant Nathaniel Stahl of the Kendallville Police Department was dispatched to a residence for a domestic dispute. When Sergeant Stahl arrived, he learned that Shawn Fritz rented the residence and that he had allowed Shay Bell to move in a few days prior but that he now wanted her to leave. Bell began packing up her belongings, and Fritz went to a nearby residence to obtain his landlord's name and phone number from the occupant of that residence, McCoy. Fritz returned to his residence with the information and shared it with Sergeant Stahl and other officers that had arrived on the scene.

McCoy then came out of her residence and began asking questions, advising Fritz and the officers as to the legal implications of the situation, and arguing

---

[1] Ind. Code § 35-45-1-3 (2014).

with the officers about how to handle the situation with Bell. Sergeant Stahl told McCoy, "This over here does not involve you." Ex. 1 (Officer Pegan's body camera footage) at 20:11:44. McCoy argued with the Sergeant, stating that she became involved when Fritz knocked on her door for the landlord information. The sergeant repeated that the situation did not involve her. McCoy then marched up to Sergeant Stahl, looked at the tag on his uniform to obtain his name, and began to walk away. As she did so, the sergeant instructed her, "You stay over there." *Id.* at 20:11:55. McCoy stopped, turned around, and began walking back toward Sergeant Stahl and yelled, "No! You don't need to talk to me disrespectfully!" *Id.* at 20:11:55-58. Sergeant Stahl replied, "Ma'am, you've got a disorderly conduct warning. Go to your residence." *Id.* at 20:11:57-20:12:00. McCoy remained where she was and yelled at Sergeant Stahl: "Really?! Really?! Cuz I . . . I . . . I . . . my right . . ." *Id.* at 20:11:59-20:12:02. Sergeant Stahl pointed to McCoy's residence, possibly grazing her arm with his finger as he pointed, and ordered, "Ma'am, go to your residence." Ex. 2 (Officer Stahl's body camera footage) at 20:12:02. McCoy screamed, "Get your hands off of me!" Ex. 1 at 20:12:03-05. The sergeant replied, "I'm going to tell you one more time . . .", but he was interrupted by McCoy screaming, "No! My right. Free speech!" *Id.* at 20:12:05; 20:12:06-08. At that point, Sergeant Stahl put McCoy in handcuffs.

[5] Based upon this incident, the State charged McCoy with disorderly conduct, a Class B misdemeanor, and resisting law enforcement, a Class A misdemeanor.[2] Following a trial to the bench, the court found McCoy guilty of disorderly conduct and not guilty of resisting. The court sentenced McCoy to 180 days, suspended to four days and ordered no probation. She now appeals her conviction.

## Discussion and Decision

[6] In reviewing McCoy's challenge to the sufficiency of the evidence to support her conviction for disorderly conduct, we neither reweigh the evidence nor judge the credibility of the witnesses. *See Sandleben v. State*, 29 N.E.3d 126, 131 (Ind. Ct. App. 2015), *trans. denied*. Instead, we consider only the evidence most favorable to the judgment and any reasonable inferences drawn therefrom. *Id.* If there is substantial evidence of probative value from which a reasonable fact-finder could have found the defendant guilty beyond a reasonable doubt, the judgment will not be disturbed. *Labarr v. State*, 36 N.E.3d 501, 502 (Ind. Ct. App. 2015).

[7] To show that McCoy committed disorderly conduct, the State needed to prove that she recklessly, knowingly, or intentionally made unreasonable noise and continued to do so after being asked to stop. *See* Ind. Code § 35-45-1-3(a)(2).

---

[2] Ind. Code § 35-44.1-3-1 (2019).

Within McCoy's challenge to the sufficiency of the evidence, however, is a question of constitutional dimension: whether she was engaged in protected political expression when she interacted with Sergeant Stahl such that her conviction of disorderly conduct violates article 1, section 9 of the Indiana Constitution.

[8]     Article 1, section 9 provides: "No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: but for the abuse of that right, every person shall be responsible." Because a person's conduct or expression may constitute free speech protected under article 1, section 9, application of the disorderly conduct statute must pass constitutional scrutiny. *Barnes v. State*, 946 N.E.2d 572, 577 (Ind. 2011), *adhered to on reh'g*, 953 N.E.2d 473. We employ a two-step inquiry to review the constitutionality of an application of the disorderly conduct statute. *Whittington v. State*, 669 N.E.2d 1363, 1367 (Ind. 1996). We must first determine whether state action has restricted a claimant's expressive activity. *Id.* If it has, we must then decide whether the restricted activity constituted an "abuse" of the right to speak. *Id.*

[9]     The first prong of the inquiry may be satisfied based solely on the police restricting a claimant's loud speaking during a police investigation. *Barnes*, 946 N.E.2d at 577. Here, McCoy was arrested for disorderly conduct after she yelled at Officer Stahl. Thus, McCoy has established that the State restricted her expressive activity.

[10] For the second prong, we consider whether the claimant's expressive activity constituted an abuse of the right to speak. This prong hinges on whether the claimant's expression constituted political speech. *Id.* If the claimant demonstrates that her speech was political, the State's restriction of the speech is unconstitutional unless the State can demonstrate that it has not materially burdened the claimant's political expression. *Whittington*, 669 N.E.2d at 1369. Such expression is not materially burdened if the State produces evidence that the expression inflicted "'particularized harm' analogous to tortious injury on readily identifiable private interests." *Id.* at 1370 (quoting *Price v. State*, 622 N.E.2d 954, 964 (Ind. 1993)). To demonstrate the requisite level of harm, there must be evidence that the speech caused actual discomfort to persons of ordinary sensibilities or that it interfered with an individual's comfortable enjoyment of his or her privacy. *Johnson v. State*, 747 N.E.2d 623, 630 (Ind. Ct. App. 2001). Evidence of mere annoyance or inconvenience is not sufficient. *Price*, 622 N.E.2d at 964.

[11] We thus begin by determining whether McCoy's speech was political. Expressive activity is political, for purposes of article 1, section 9, if its point is to comment on government action, including criticism of the conduct of an official acting under color of law. *Whittington*, 669 N.E.2d at 1370. However, where an individual's expression focuses on the conduct of a private party, including the speaker herself, it is not political. *Id.* We must judge the nature of the expression by an objective standard, and the burden of proof is on the

claimant to demonstrate that her expression would have been understood as political. *Id.* If the expression is ambiguous, we must conclude the speech was not political and evaluate the constitutionality of the State's restriction of the expression under standard rationality review. *Id.*

[12] Under the circumstances presented here, McCoy commented on and criticized government action. During the interaction, Sergeant Stahl instructed McCoy to go back to her residence and stay there. McCoy replied that he should not speak to her in a disrespectful manner. Sergeant Stahl then issued a disorderly conduct warning and attempted to direct McCoy back to her own yard. McCoy responded that the sergeant should keep his hands off of her. McCoy's statements were directed at the appropriateness and legality of Sergeant Stahl's conduct toward her and thus constituted criticism of the conduct of an official acting under color of law. *See Jordan v. State*, 37 N.E.3d 525 (Ind. Ct. App. 2015) (holding that profanity-laced statements yelled at police by defendant during traffic stop were political speech in the form of criticism of police action in that statements focused on police conduct); *Johnson*, 747 N.E.2d 623 (determining that defendant's barrage of profanity at officer constituted political speech where defendant was commenting on actions of officer acting under color of law when officer attempted to issue citation to defendant); *Shoultz v. State*, 735 N.E.2d 818 (Ind. Ct. App. 2000) (holding that defendant engaged in protected political speech when he asked arresting officer what the problem was and why he was bothering other people, demanded whether officer had warrant

to be on property, and requested that officer leave if he did not have warrant), *trans. denied* (2001).

[13] After Sergeant Stahl's disorderly conduct warning and just before McCoy was arrested, she told the sergeant, "No" and invoked her right to free speech. Although this last comment shifted to more of a defense of her own conduct, prior to the sergeant's warning McCoy had been protesting the way the sergeant was treating her. A conviction for disorderly conduct requires proof of "unreasonable noise" both before **and** after an official warning. *See* Ind. Code § 35-45-1-3(a)(2). McCoy's pre-warning speech constituted political expression such that the element of the offense of disorderly conduct that requires unreasonable noise before an official warning was not met. *See Price*, 622 N.E.2d 954 (holding that defendant's overall complaint, which included her statement that she had not done anything after being threatened with arrest, constituted political speech); *see also Whittington*, 669 N.E.2d at 1370 (discussing its earlier decision and stating: "In *Price*, the State conceded that Colleen Price was protesting police treatment of another citizen before an officer warned her to be quiet. 622 N.E.2d at 956-57. After the warning, her expression did shift to a defense of her own conduct, *id.* at 957, but a conviction for disorderly conduct requires proof of "unreasonable noise" both before and after an official warning. *See* Ind. Code Ann. §35-45-1-3(2) (West Supp. 1996). It was the State's reliance on Price's pre-warning political expression to prove an essential element of the offense that was fatal to the conviction."); *see also Jordan*, 37

N.E.3d at 532-33 (viewing defendant's statements as comment on police authority even when officer told defendant that she needed to leave and defendant responded that she did not need to leave). We conclude that McCoy's overall complaint constituted political speech.

[14] Having determined that McCoy's statements were political speech, we now turn to whether the State demonstrated that it did not materially burden her opportunity to engage in such speech. To do so, the State was required to produce evidence that McCoy's speech inflicted particularized harm analogous to tortious injury on readily identifiable private interests. *See Whittington*, 669 N.E.2d at 1370.

[15] The only evidence presented by the State was the testimony of Officer Pegan, Sergeant Stahl, and Officer Kline, all of whom testified that McCoy was "yelling." Tr. Vol. II, pp. 28, 49, 64. However, Deputy Polly testified that he was "fifty feet or more" from McCoy, and he could not clearly hear what she was saying. *Id.* at 83. In its brief to this Court, the State notes that, in the officers' body camera footage, McCoy's neighbors can be seen "entering and exiting their house," and children can be seen "playing across the street." Appellee's Br. p. 17. The fact that neighbors were outside their homes is not sufficient to show that their peace and tranquility were infringed upon. Indeed, on cross examination Officer Kline acknowledged that neighbors were packing things into a vehicle and that children across the street were hollering at the officers to get them to wave and that none of these activities changed

throughout the course of the afternoon. *See* Tr. Vol. II, p. 75. Thus, the evidence showed that McCoy's neighbors were undisturbed by her extremely brief interaction with Sergeant Stahl and that they went on with their business as usual. The State failed to show that McCoy's speech infringed upon the peace and tranquility of the neighbors or that any nearby resident was caused actual discomfort.

## Conclusion

Based upon the foregoing, we reverse McCoy's conviction on the ground that the evidence is insufficient to support a conviction for disorderly conduct that would be consistent with article 1, section 9 of the Indiana Constitution.

Reversed.

Riley, J., and Vaidik, J., concur.